# APPENDIX:

CONTAINING -

A FEW CASES IN THE HIGH COURT OF ERRORS
AND APPEALS, &c.

1803.

## Hassanclever and others *against* Tucker.

*Monday,*
*January 10.*

THIS cause was argued in the Supreme Court, upon a case in the nature of a special verdict, which stated in substance, that

Isaac Melchor being seised of estate real and personal, made his last will and testament on the 22d *May* 1788 in the words following: "It is my will that my just debts "and funeral expenses be fully paid and satisfied by my ex-"ecutors hereafter named, as soon after my decease as pos-"sible. *Item*, I give and bequeath unto my niece *Maria* "*Vandeeren* the sum of 300l. money of *Pennsylvania*, to "be paid her in gold or silver coin on the day of her mar-"riage, or arrival at lawful age, which ever shall first hap-"pen, meanwhile to be placed out at interest *from one year* "*after my decease, on good real security*, for her use, and "in case of her death in an unmarried state, *then to sink* "*into my residuary estate*. *Item*, I give and bequeath unto "Miss *Eleanor Clifton* of *Philadelphia* the sum of 500l.

The testator ordered his just debts and funeral expenses, to be paid by his executors, and then bequeathed a legacy of 500l. to *A.*, to be paid her in one year after his decease, and in case of her death to be divided among her three sisters. He also devised specific real estate to *B.*, and a legacy of 100l. to be paid at lawful age, but in case of his death unmarried, the land and money to sink into his

residuary estate. The *rest and residue of his estate real and personal* he devised and bequeathed to his brothers and sisters their heirs and assigns as tenants in common, provided that his sister *M.* should keep the *whole* in her possession during her widowhood.

*Held*, that the testator having blended his real and personal estate, the real was subject to the burden of *A* 's legacy, upon the deficiency of the personal; and that the legacy was not to wait for the expiration of *M.*'s life estate in the land, but to be paid in one year after the testator's decease.

" money of *Pennsylvania*, to be paid her *one year after my*
" *decease*, and in case of her death without issue, to be
" equally divided among her three sisters, *Elizabeth*," (Mrs.
*Tucker*, the defendant in error) " *Mary*, and *Frances*, or
" the survivors of them. *Item*, I give devise and bequeath
" unto *Horatio Lawrence* and to his heirs and assigns, my
" five tracts of land, situate at *Logotown* now called *Mont-*
" *morin* in the county of *Westmoreland*, estimated at 3000*l*.,
" to hold to him his heirs and assigns for ever; and I do
" further give and bequeath unto him the sum of 100*l*. to
" be paid to him at lawful age, meanwhile to be placed
" out at interest on good security for his use; but in case he
" depart this life unmarried, the devise of land, and bequest
" of money to him made as aforesaid, shall be void, and the
" *whole* sink into my *residuary estate. Item*, the *rest and re-*
" *sidue of my estate real and personal* whatsoever and where-
" soever, I give devise and bequeath unto my dear brothers
" and sisters, *Adam Melchor, Jacob Melchor, Maria Hassan-*
" *clever*, and *Elizabeth Shalhts* the wife of *Jacob Shalhts*,
" their heirs and assigns for ever as tenants in common, and
" to be equally divided between them share and share alike,
" *provided always* that my sister *Maria Hassanclever* keep
" the *whole* in her possession *during her widowhood*."

The said *Isaac Melchor* died seised of the said real estate
in fee simple, and possessed of the said personal estate abso-
lutely, on the ——— day of ——— at which time all the le-
gatees and devisees in the said will named were living.
Subsequent to his death, *Eleanor Clifton* one of the legatees
in the said will named, died leaving no issue. There are no
assets in the hands of the executors in the said will named,
out of which the said legacies or any part thereof can be paid
and satisfied; but the value of the lands devised, is to a
greater amount than the legacies in the said will mentioned.

The question for the court was, whether the lands de-
vised in and by the said will, were liable to the payment of
the said legacies; and whether the said residuary devisees
were chargeable therewith on account of the said devises,
and of the lands, into the possession of which they entered
after the testator's death. If the court should be of the af-
firmative opinion, judgment to be entered for the plaintiff; if
not, judgment for the defendants.

The Supreme Court being of opinion with the plaintiff, the defendants brought a writ of error in this court, where by consent a supplementary case was added, which stated, that *Maria Hassanclever* at the time of the testator's death was and still remained a widow, and that the testator left a personal estate nominally adequate to pay his debts and legacies, but which in point of fact was insufficient.

If the court should be of opinion that the legacy was payable before the death or marriage of Mrs. *Hassanclever*, and was also chargeable upon the land, judgment to be entered for the defendant in error, with interest from the expiration of one year after the testator's death; but if chargeable upon the land, and not payable until one of those events, judgment to be entered for the defendant for the principal sum, with stay of execution till her death or marriage.

*S. Levy* and *Rawle* for the plaintiffs in error argued, 1. That lands are not the proper fund to pay legacies, nor are they ever charged, unless it manifestly appears to have been the testator's intention, which was not the case here. 2. That at all events the legacy to the defendant in error was not payable until after the death or marriage of Mrs. *Hassanclever*.

1. The instances in which chancery and our own courts have subjected lands to the payment of legacies, come within one of the following classes. Where the expressions of the testator are clear to that effect; *Tomkins* v. *Tomkins* (a), *Trott* v. *Vernon* (b), *Alcock* v. *Sparhawk* (c), *Astley* v. *Powis* (d), *Davis* v. *Gardiner* (e), *Thomas* v. *Brittnell* (f); or where he leaves no personalty, *Nichols* v. *Postlethwait* (g); or it is a provision for a wife or child, *Lypet* v. *Carter* (h); or where a fraud is intended by the residuary devisee, *Elliot* v. *Hancock*, (i); or lastly where the words of the testator, if applied to real estate, would charge it with debts; *Thomas* v. *Brittnell*, *Williams* v. *Chitty* (k).

In the present case the expressions are far from being clear

(a) *Prec. in Chan.* 397.　(e) 2 *P. Wms.* 187.　(h) 1 *Ves.* 499.
(b) *Id.* 430.　(f) 2 *Ves.* 313.　(i) 2 *Vern.* 143.
(c) 2 *Vern.* 228.　(g) 2 *Dall.* 131.　(k) 3 *Ves. jr.* 551.
(d) 1 *Ves.* 496.

to that effect. The testator directs that his just debts and funeral expenses shall be paid, but says nothing about the payment of his legacies. He does not enjoin any one to see *his whole will performed*, as in *Alcock* v. *Sparhawk;* nor does he commence his residuary devise, *after my debts and legacies paid*, as in *Davis* v. *Gardiner*, *Tomkins* v. *Tomkins*, and *Trott* v. *Vernon;* but he gives the residue as a specific surplus of real and personal property not before devised. *Bagwell* v. *Dry* (a), *Doe* v. *Underdown* (b), *Hogan* v. *Jackson* (c), *Goodtitle* v. *Knott* (d), *Ridout* v. *Paine* (e). " The " rest and residue here pass as a specific devise, in the same " manner as the next preceding devise did to the devisee " thereof, and are to be understood, the residue of what he " had not before particularly devised, not the residue after " debts and legacies paid." *Adams* v. *Meyrick* (f). The intention of Mr. *Melchor* is apparently the other way. If the land was to be charged with the legacies, why did he direct the legacy of *Maria Vandeeren* to be put out upon *good real security?*

The testator was possessed of personal property; and therefore there is no presumption, as in the second class of cases, of a design to charge the land. The sum of 1500*l.* due from a debtor in France, was thought more than sufficient to pay the legacies; and although subsequent circumstances have overthrown the calculation, the probability that the testator did so calculate, is sufficient to shelter the lands, this sum of 1500*l.* being exclusive of what very nearly paid his debts. *Knightly* v. *Knightly* (g).

This legacy is not a provision for wife or child, as in *Lypet* v. *Carter;* on the contrary, it will encumber the property of a sister with a bequest of 500*l.* to one in no way related to him.

The residuary devisees have made no improper disposition of the fund legally chargeable with the legacies. The debts have been partly paid by the personal property, and the rest by the law of *Pennsylvania* must come upon the lands. But the pecuniary legatees cannot take the place of the debts

(a) 1 *P. Wms.* 700.     (d) *Cowp.* 43.     (g) 2 *Ves. jr.* 328.
(b) *Willes* 398.          (e) 3 *Atk.* 486.
(c) *Cowp.* 299.          (f) 1 *Eq. Abr.* 271. *pl.* 13.

on the real estate. The devisees of the land are as specific
devisees, and it was as much the testator's intention that they
should have the land, as that the legatees should have their
legacies. *Clifton* v. *Burt* (a), *Herne* v. *Meyrick* (b).

Nor would the words of this will in *England* charge the
land with the debts; *à fortiori* it cannot charge it with the le-
gacies. *Thomas* v. *Britnell*, *Williams* v. *Chitty*, *Eyles* v. *Ca-
rey* (c), *Shallcross* v. *Finden* (d). The act of assembly, of
21 *March* 1772, 1 *St. Laws* 631, does not alter the case. It
affords a remedy to the legatee, but it leaves the question as
it stood, whether lands or chattels are to be the fund. Debts
are undoubtedly chargeable on the lands, because as to them
lands are chattels; but the doctrine of charging them with
legacies, stands as in *England*, where a clear and manifest
intention is always required.

2. *Maria Hassanclever* has an estate for life prior to the
distribution of the residuum, and therefore prior to the pay-
ment of the legacies, if they are charged on that residuum.
The testator has postponed his brothers and sisters to the
life estate of this favourite devisee; and it is rational to pre-
sume the same limitation of his bounty to those not so near
him. *Whole* means whole *estate*, and not whole residue. The
antecedent words at the beginning of the clause, are not to
be so imperative as to control the intention, collected with
more certainty from the spirit of the will at large. *Phipps* v.
*Annesley* (e).

*Adams* and *Ingersoll* for the defendant in error. 1. The
intention of the testator is in this case the sole guide. He
certainly designed to pay his legacies, and every line of the
will proves that he intended to subject his whole estate to the
payment. In the first place he has blended the two funds to-
gether, which is of decisive influence. *Roper on Leg.* 197.
*Kidney* v. *Cousmaker* (f). The language of the lord chancel-
lor is, " where a testator combines real with personal estate
" generally, there is no doubt that all the burthens of the
" personal, should be put upon this so combined with it.
" There are many cases for that." If there is no fund but the

(a) 1 *P. Wms.* 678.          (c) 1 *Vern.* 457.          (e) 2 *Atk.* 58.
(b) 1 *P. Wms.* 201.          (d) 3 *Ves. jr.* 738.          (f) 1 *Ves. jr.* 444.

APPENDIX.

HASSANCLE-
VER
v.
TUCKER.

real estate, it is agreed to be chargeable; what other result should there be when the testator treats both funds as one? In *England* land is more sacred than personalty, and to charge it with simple contract debts or legacies, requires the assent of the testator; but in this state it is as chattels for the payment of debts, and therefore should not be exempted with extraordinary care, from the same liability to legacies. In the present will, lands and personalty are confounded. The testator bequeaths legacies, devises lands, and in one clause, and to the same persons, he gives every thing of which he had not already made a disposition. There is no one of the cases read which comes up to this. In *Masters* v. *Masters* (a) the strong expression of the master of the rolls is, that the estate should be so marshalled, that as far as possible, *the whole will might take effect, and all the legacies be paid.* The testator has done the same thing by putting both funds into one. *Herne* v. *Meyrick* amounts to this only, that lands are not liable unless charged. *Clifton* v. *Burt* declares that the intention of the testator shall not be disappointed, the legacies being charged on copyhold. The case of *Clowdsly* v. *Pelham* (b) is stronger than the present. One devised land to *A* and the heirs of his body, remainder over, and in another part of his will bequeathed to *A* all his personal estate, and made him executor, willing him to pay his debts. Though the clause as to the payment of debts seemed to relate to the personal estate only, and though the lands were devised to the defendant in tail, and it was objected that tenant in tail could not be a trustee, yet the court decreed both real and personal estate to be sold for the payment of debts. Now the same words will charge legacies as well as debts, which makes this case conclusive. The funds are here given to the same persons, and the lands are in fee, so that it is a matter of indifference in the abstract, from which fund the legacies are paid, which was not exactly the case in *Clowdsly* v. *Pelham*. In *Eyles* v. *Carey* the charge upon the land was excluded by a special condition to pay a certain rent. *Thomas* v. *Brittnell* proves that an implied charge on real estate may be explained by a subsequent clause, which does not exist here. *Knight-*

(a) 1 *P. Wms.* 422.          (b) 1 *Vern.* 411.

*ly* v. *Knightly* was a bill to come upon the land specifically devised in the body of the will, to which this residuary clause cannot be compared; for here, " rest and residue," unlike the cases of *Doe* v. *Underdown*, and *Bagwell* v. *Dry*, is a floating sum, likely to be increased by the lapse of some of the legacies, and therefore uncertain. If all the legacies are paid, the residue must be less; if not, then more. Can a devise of this kind be called specific, or can there be a doubt that it must pay the legacies, when it is upon their payment, that its quantum depends? *Butler* v. *Freeman (a)*, *Hockly* v. *Mawby (b)*. The land devised to *Horatio Lawrence*, is a devise which might make *Knightly* v. *Knightly* applicable. What is meant by the residue of the personal estate? That which is left after payment of the debts and legacies. But "rest and residue" are applied to both funds. Can they include the payment of legacies in the one, and not in the other? Have they different meanings in the same sentence? It would be strange, says Lord *Kenyon*, if the same words should have different meanings when applied to real and personal estate. It is not so, if the estates are to go together to the same persons. 2 *Fearne* 195 (362). *Adams* v. *Meyrick* is a full recognition of the general rule, that " rest and residue" means after debts and legacies paid. The rule in *Doe* v. *Underdown* is correct, that things are to be taken as they were at the time of making the will; but here was a small personal, and larger real estate, the former insufficient to pay the debts within a very short time after the making of the will, and therefore probably so known to the testator. If the legacies were not to be paid out of the land, they were a mockery of benevolence.

2. The second point is necessarily connected with the first; but there is in addition, a *time* annexed to the payment of the legacies. If the life estate is prior to the legacies, they cannot be paid within a year after the testator's death.

CHEW, *President of the High Court.* The court are unanimously of opinion with the defendant in error on both points; first, that the lands having been blended by the testator with

(*a*) 3 *Atk.* 58.     (*b*) 1 *Ves. jr.* 151.

APPENDIX.

HASSANCLE-
VER
v.
TUCKER.

his personal estate, are charged with the legacies, " rest and residue" meaning what was left after the payment of debts and legacies; and secondly, that the legacy in this case was not intended to wait for the expiration of a life estate, but was payable at the end of one year after the testator's decease.

Judgment affirmed.

## High Court of Errors.

1807.

*Philadelphia,*
*Saturday,*
*July 25.*

The testator devised his plantation to his son *F.* and his heirs and assigns for ever, subject to the payment of a sum of money, which he ordered *F.* to pay by instalments to his other son *P.* He also gave *F.* certain horses, cows, &c.; and then ordered that in case his son *F.* should die under the lawful age of 21 or without issue, his share in the testator's whole estate should go to *P.*, his heirs and assigns; and