THOMAS ADAMS & others *vs.* LEMUEL BRACKETT, Executor

The will of a testator was thus: " I give, bequeath and devise to my wife the following described pieces of land," (particularly describing them:) " Also all my personal estate of every kind, wheresoever it may be found, which I may be possessed of at the time of my decease, after payment is made therefrom of my just debts, funeral charges and other necessary expenses. To have and to hold the same to her, her heirs, executors, administrators and assigns, to their use and behoof forever. The other part of my real estate is to be divided as the law directs : " The debts, &c. of the testator exceeded the value of his personal property. *Held,* that the real estate, devised to the wife, was not charged with the payment of his debts, &c. and that the undevised real estate should first be applied to the payment of the excess of the debts, &c. over the value of the personal property.

A husband subscribed for shares in the stock of a bank, and on paying the instalments, he stated that the shares were his wife's, and that she would have something to live upon, if he should spend all his property : He took receipts as for payments made by her, which payments were entered in the book of the bank, as made by the wife, and a certificate was issued to her, as owner of the shares : The husband afterwards purchased shares in the same bank, in his own name, and sometimes pledged the same to the bank as security for loans made to him, but never so pledged, nor proposed so to pledge, the shares that stood in his wife's name : He received dividends as long as he lived, on the shares that stood in his own name and on those that stood in the name of his wife, and always requested the cashier of the bank to give him the money in two distinct and separate sums ; and he sometimes asked for particular kinds of money for his wife, in payment of the dividends on the shares that stood in her name. *Held,* on the husband's death, that the wife was entitled, as against his heirs at law, to hold the shares, that stood in her name, as her own property ; there having been a gift thereof to her by her husband, valid as against all persons except his creditors, who might resort to the shares for payment of their debts, if he did not leave other property sufficient to pay them.

THIS was an appeal by the heirs of Ebenezer Adams, from a decree of the probate court, granting a license to the execu tor of his last will to sell so much of said testator's real estate which was not devised by his will, as should produce a sum sufficient to pay the excess of his debts over " the value of that part of his personal property, which was applicable to the payment thereof." Two reasons of appeal were assigned : 1st. Because there was sufficient personal estate for the payment of the debts, &c. unaccounted for by the executor of said deceased. 2d. Because the payment of the debts, &c. were charged upon the estate devised and bequeathed to Elizabeth Adams, widow of the deceased, in his will, which exempts therefrom the real estate which the executor is licensed by the said decree to sell.

The parties submitted to the court the following statement of facts, in reference to the first reason assigned by the appellants for their appeal: The testator was an original subscriber for six shares in the capital stock of the Quincy Stone Bank, and on the 1st of June 1836, he paid to the cashier of said bank $300, the first instalment on said shares, and directed the cashier to make out a receipt to his wife, Elizabeth Adams — saying that the shares were hers, and that if he spent all his property, his wife would have something to live upon, if the bank should prosper. The cashier made out the receipt accordingly, and requested him to take another share, but he declined — saying he might perhaps conclude to take some for himself; and if he did, he should want more than one; but his wife did not want any more. On the 13th of August 1836, the testator went, with his wife, to the bank, and paid $300, the second and final instalment on said shares; and the cashier, by the testator's direction, made out to his wife a certificate of six shares, in the usual form, delivered it to her, and took her receipt therefor. The payments of both instalments were entered, by the cashier, on the stock journal of the bank, as made by Elizabeth Adams.

The dividends on said shares were paid to the testator, during his life, and he signed receipts therefor, on the dividend book; for the first dividend, ' Ebenezer Adams, for Elizabeth Adams;' for the subsequent dividends, ' Ebenezer Adams.'

In April or May 1837, the testator purchased fifteen shares in said bank, in his own name, and a larger number afterwards, and at various times pledged those shares, or some of them, to the bank, as collateral security for money lent to him. But he never pledged, nor proposed to pledge, the six shares that stood in his wife's name. Sometimes, when he received a dividend on said six shares, he asked the cashier for new bills, and sometimes for gold pieces — saying it would please his wife to have them. He uniformly requested the cashier to give him the dividend upon his wife's shares, and upon his own shares, in two distinct and separate sums.

The appellants, in support of their second reason of appeal,

24 *

relied on that part of the will of the testator which is hereinafter set forth in the opinion of the court.

*Kingsbury,* for the appellants.

*Gourgas,* for the appellee.

HUBBARD, J. One subject, presented upon these reasons of appeal, arises out of the will of Ebenezer Adams, which we have had occasion in a previous case to consider, so far as it regarded the widow's claim for dower. *Ante,* 277. We are now called upon to determine whether the debts of the testator, which the appellee contends exceeded his personal estate,) are a specific charge on the real estate devised to the wife ; or whether they are to be paid out of the real estate which descended to his heirs at law.

The will of the testator was thus : "I give, bequeath and devise to my wife, Elizabeth Adams, the following described pieces of land," [describing them severally:] "Also all my personal estate of every kind, wheresoever it may be found, that I may be possessed of at the time of my decease, after payment is made therefrom of my just debts, funeral charges, and other necessary expenses. To have and to hold the same to her, her heirs, executors, administrators and assigns, to their use and behoof forever. The other part of my real estate is to be disposed of as the law directs."

The appellants contend, that the devise to the wife, of the real and personal estate, is so blended and combined, that the same constitute one fund, and therefore what is a charge upon the one is a charge upon the other.

It has indeed been repeatedly decided, that where the two are thus blended, the real estate is equally chargeable with the debts as the personal. *Kidney* v. *Coussmaker,* 1 Ves. jr. 436. *Bench* v. *Biles,* 4 Mad. R 187. *Hassanclever* v. *Tucker,* 2 Binn. 525. *Witman* v. *Norton,* 6 Binn. 395. In these cases, the intent to charge the real estate is necessarily inferred from its being blended with the personal ; and in most of the cases where the rule is applied, the devise of the real and personal estate is contained in the same clause. And where the intent is thus manifest, there is no doubt that the burden is as much imposed on the real as on the personal estate.

Adams & others *v.* Brackett, Executor.

In the case before us, however, the real and personal estate are not devised in one clause ; there is no blending or combining them together.   Each devise is distinct and separate ; the last does not depend on the first for its construction or meaning ; and the intention to charge the real estate cannot be inferred as a necessary consequence which the court are bound to regard.

On the other hand, we are of opinion, from the language of the devise itself, the several descriptions of the real estate, and from the manner in which the payment of his debts is mentioned in connexion with the personal estate, that it was not his intention to charge the lands and tenements, devised to his wife, with any portion of his debts.

It has been urged, that the words " also " and " after," as used in the clause relating to the personal estate, express the intention of uniting the two devises together and making the real estate subject to the debts.   If this reliance on single words in common use could be considered as availing the appellants ; with equal force, we think, the appellee might contend, that the word " therefrom " was appropriated to the personal estate, and would thus clearly express the intention of the testator.

But the case does not call upon us to give any peculiar force to these particular words, though we think them all capable, in themselves, of being applied to preceding clauses and subjects. Here the intention to charge the debts upon the personal estate being manifest by the distinct clause or paragraph, in which the personal estate is given, containing the direction to pay the debts, we are clearly of opinion that the real estate, which was not devised, but left to be disposed of as the law directs, must, after the personal estate is exhausted, be first applied to the payment of the debts, before the real estate, specifically devised to the widow, can be touched.

Another reason, stated for the appeal from the decree of the court of probate, why no part of the residue of the real estate of the testator, of which the appellants, as heirs at law, are now in possession, should be sold for the payment of debts, is, that the six shares in the Quincy Stone Bank, standing in the name of Elizabeth Adams, the testator's widow, are sufficient, without the other personal estate, to pay all the debts.

This gives rise to the question, whether the six bank shares are the separate property of the widow, or whether they are a portion of the testator's estate.   The facts do not show whether the money, which was laid out in the purchase of these shares, was ever the separate property of the wife ; and we cannot assume that as a fact, but in the absence of proof, take it for granted that these shares were purchased with the money of the husband, and given to the wife.

The rights of females in estates, both real and personal, accruing to them before and during coverture, have often come before this court ; and since the principles of equity have been infused into our laws, by various statutes, the rigid rules of the common law have been in some degree relaxed, in respect to the capacity of married women to hold property separate from their husbands ; so much so, that a learned judge, in giving a dissenting opinion in the case of *Phelps* v. *Phelps,* 20 Pick. 562, says that the case of *Stanwood* v. *Stanwood,* 17 Mass. 57, was not so strong as the one before him, and that, even in that case, the decision was contrary to the rules of the common law.   But the case of *Stanwood* v. *Stanwood* has received the sanction of successive judges, and the principles there laid down are now too well established to be longer successfully questioned.

No case, that I am aware of, precisely like the one at bar in all ; s circumstances, has presented itself in our courts.   But similar facts are stated by Jackson, J. in his very learned opinion in the case of *Draper* v. *Jackson,* 16 Mass. 482.   He says, in considering the question before him, viz. whether a note and mortgage, made to a man and his wife during coverture, should go to the wife, or not, in the event of her surviving, " we except the case of a voluntary gift by the husband to his wife ; as when he advances his own money or other property, and takes for it a note or bond to himself and wife.   This, like every other voluntary conveyance, would, without doubt, be void as against the creditors of the husband."   But here he does not consider such a gift as void in itself, but rather like other voluntary conveyances, which, it is well known, are good against the heirs at law of the grantor ; or if chattels, against his executors.   And in the

recent case of *Phelps* v. *Phelps*, before referred to, Dewey, J. says, by the husband's consent, " she may become a party as grantee to a deed, or obligee to a bond, or payee to a promissory note ; and when thus made a party, new rights may be acquired by her. This may be effected by a contract made jointly with the husband and wife, or it may be by a contract with her alone ; and in either case, upon the survivorship of the wife, these interests, although accruing during coverture, will vest in her."

In these cases thus put, I see no reason why the husband may not furnish the consideration to the grantor of the deed, the obligor of the bond, or the maker of the note, for the benefit of his wife, using these parties as trustees, subject only to the claims of creditors.

In England it has been determined that, in equity, a gift from the husband to the wife is valid. *Slanning* v. *Style*, 3 P. W. 338. *Lucas* v. *Lucas*, 1 Atk. 270. In the case of *McLean* v. *Longlands*, 5 Ves. 79, Lord Alvanley says " nothing less would do than a clear irrevocable gift, either to some person as a trustee, *or by some clear and distinct act of his*, by which he divested himself of his property, and engaged to hold it as a trustee for the separate use of his wife." And in *Walter* v. *Hodge*, 2 Swanst. 106, Sir Thomas Plumer, in referring to the case of *Lucas* v. *Lucas*, says, " in the single case of £1000 south sea annuities, transferred by the husband into the name of his wife *in his life time*, the court thought that so decisive an act, as amounted to an agreement by the husband, that the property should become hers. That seems to come under the description stated by Lord Alvanley ; *it is an act, a clear and distinct act, by which the husband divested himself of his property*."

But the case at bar bears a very strong resemblance to that of *Stanwood* v. *Stanwood*, before referred to. And though its incipient stages were different, yet in principle we do not think it distinguishable from that case ; and to enforce a different decision here would be doing a great violence to the intentions of the husband, and to the equitable claims of the wife. The difference, in that case, consisted in the fact, that the bank shares, previous to the marriage, were the property of the wife.

The husband, however, received the dividends, and when the new bank was established and the shares were. reduced, he subscribed for the new shares, in her name, while the balance in cash, which was paid, was passed to his credit. The declaration of his intention not to appropriate it to himself, alone led the court to decide that it was a disaffirmance of any prop erty in himself. So here, in the case at bar, there was a clear and distinct act of the husband, divesting himself of the money necessary for the purchase of the shares, and making the same the property of his wife. The intention to give and the act of giving are complete ; and the dividends were afterwards received for her benefit.

We think, therefore, in the application of the principles in decided cases, this gift can be supported as against the claims of the heirs at law ; and that it may be considered as an appointment, on his part, of the wife, to receive the same to her own use.

If the proceeds of these shares were necessary for the pay ment of the debts of the testator, we are clearly of opinion that they would be held subject to such debts, and that the claims of creditors, in such a case, are paramount to those of the wife. But in the construction to be given to the will of the testator, it is manifest that he intended that his debts should be paid out of the undevised surplus of his real estate remaining at the time of his death. We are therefore of opinion, that the demand of the heirs, to have the bank shares sold for the payment of debts, cannot be supported. And in conformity to this opinion, the appeal is dismissed, and the case is to be remitted to the court of probate for further proceedings.