The opinion of the Court was delivered by
Wardlaw, A. J.
By an Act of our Legislature, passed in 1858, (12 Stat. 700,) it is enacted that real estate acquired after the making of a will, shall pass thereunder as personal estate does. This takes away the reason under which *257 a residuary devise of real estate was held to be specific,(a) because it was made definite by reference to ownership at the making of the will, (Forester vs. Leigh, Amb. 171,) but it does not affect the case before us, for here the will was made, and the testatrix died before the Act was passed. In speaking of the law, I must then be understood to mean the law which governs the case, and to save words I will-speak of it as if it still remained unchanged.
-The agreement of counsel at the bar brings before this Court some circumstances which do not appear in the Master’s report. The testatrix at the making of the will had one granddaughter, an orphan of tender years, her only descendant. She had previously adopted for a grandson a youth, who was a stranger to her blood and her family. She owned two plantations, a house and two separate lots in Charleston, ninety-six slaves, two pews in St. Philip’s Church, plantation utensils, &c., all of which were in 1860 sold, under some order of .Court, partly for cash and partly for bonds, at prices amounting to about $105,000, to wit, the realty for about $50,000, and the personalty for about $55,000. Of the proceeds of sale, $40,000 or more, paid to the executor or uncollected, have been lost, so that the balance, which may be realized from the sales of the personalty, will be insufficient to meet the pecuniary legacies and annuities.
The only specific legacies given by the will are a watch and a brooch. The pecuniary legacies (the largest being $20,000, to the adopted grandson, of which payment was long deferred) amount to $24,500, and the annuities (besides *258 occasional aid to an old servant) to $1,150 per annum, ■which latter might have been expected soou to diminish by the death of the annuitants. To meet the annuities by interest would probably have required at first a capital of $16,500 — so that the whole amount of legacies and annuities might have required the investment of about $él,000— or $3,000 in cash and annual profits equivalent to the interest on $38,000, with accumulated means for the remote payment of $20,000.
The will shows no introductory grouping of all the property under such words as my worldly estate, but the sweeping extent of the residuary clause leaves no room for intestacy except as to real estate that might have been subsequently acquired.
The first item relates to the adopted grandson; the second item contains all the other legacies except an annuity, directed to cease upon a remote contingency, which is given in the last clause; the third item is in these words: “ Item: All the rest and residue of my estate, real and personal, of which I am now possessed, or may be possessed of at the time of my death, or may be entitled to from any quarter whatever, I give to my friends and relations,” (five gentlemen named,) “ to have and to hold in trust for the use of my grand-daughter, Annie Isabel Laurens, during her life, not subject to the control, liabilities, debts, or contracts of any husband or husbands she may marry, but for her sole and separate use, and the income to be paid only to her order and receipt; and at her death I give and ■ bequeath the same to her issue alive at the time of her death, to be equally divided among them, if more than one, share and share alike, to them and their heirs forever.” Following are directions concerning a settlement to be made, when her granddaughter marries, “of all the property to which she is entitled as her father’s estate;", and provisions in case of the granddaughter’s death leaving no *259 issue “to take the estate.” By another item provision is made for distribution of the “estate,” in case of the issue of the granddaughter dying before they arrive at years of discretion “to take the estate.” The five gentlemen before ■named are appointed “my executors and trustees of my estate,” and are requested to be guardians of the granddaughter, the adopted grandson, and the- servant, Sarah; but neither to them, nor to either of them, is given any beneficial interest or any express power to sell real estate.
No devise precedes the gift of the residue, nor is there anywhere, except in the .residuary clause, mention of real estate.
No direction is given that the legacies shall be paid, either general or by the executors, besides the incidental introduction of the words to be'paid, to be applied, he shall receive, in the instruction concerning the grandson, and to be 'paid quarterly, to be paid monthly, to be paid out of my estate, to be applied, in reference to some of the annuities; all of which words seem to look to the acts of the executors, especially the discretionary allowance for the grandson is “as my executors and his guardians think fit to appropriate.”
There is no mention of debts, although there were some, nor of expenses, although of course they occurred.
Has the real estate been charged with the pecuniary legacies, either in common with the personal estate, or as an auxiliary, in case of the insufficiency of the latter?
Ordinarily, as it is acknowledged, the personal estate is the fund from which pecuniary legacies must be paid. A devise of land is specific, and there can be no abatement of specific devises or legacies to answer the pecuniary legacies; but for the pecuniary legatees, the appellees, it is urged that every testator may charge his real estate at pleasure, that this testatrix, by blending her estate, real and personal, in the gift of the residue, has subjected the *260 whole to the payment of the legacies, by deduction of which the residue is to be ascertained, and that such gift of land in a residue is not a specific devise.
The power of the testatrix to charge her real estate with legacies is unquestionable. Has she done so, presents a question of construction, to be resolved by ascertaining the intent of her testamentary dispositions. Upon those who seek to change the general rule, is the burden of showing sufficient indications of her intent to do so.
The case of Spong vs. Spong, in the House of Lords, (3 Bligh, 84, N. S., 1 Y. & Jer. 300,) decided that where real estate was charged, the portions of it contained in a residuary devise should answer the charge, before the portions that were specifically devised; but that, too, was a question of construction and intention, and the general rule remains that every devise is specific, however subject it may be to the power of the testator to encumber it with charges and conditions. (Clifton vs. Burt, 1 P. Wm. 678; Warley vs. Warley, Bail. Eq. 409.)
In England, before the Act which made lands not specially charged, assets in equity for the payment of debts, very slight and uncertain indications of a testator’s intent to charge his real estate with his debts, sufficed to authorize the Courts to indulge the desire, frequently avowed, to make testators just to their creditors before they became generous to their devisees. (Astly vs. Paris, 1 Ves. Sen. 488; Godolphin vs. Pinneck, 2 Ves. Sen. 271; Williams vs. Chitty, 3 Ves. 551.) Where legacies were contained in the same sentence with debts, both were naturally brought under the same rules of construction; but there were grounds for distinction between them, inasmuch as debts existed apart from the will, whilst legacies depended wholly on it, aud creditors had given meritorious and valuable consideration, but legatees were objects of voluntary bounty, no more worthy of favor than devisees whom the *261 general law preferred. (Kightley vs. Kightley, 2 Ves. Jun. 328; Keeling vs. Brown, 5 Ves. 359.) Therefore, where legacies stood alone in a clause, under which debts standing alone .would have been charged, a determination against the legacies involved no palpable inconsistency, and prevented the irregularity of giving to specific devises less effect than to pecuniary legacies.
The cases in which lands have been charged with legacies, may be ranged under the following six heads. If in any case there cannot be found some one or more of the circumstances, which are essential to some one of these heads, I think there is no authority for charging real estate in such case.
1. W here the charge is express. Here it may be observed that according to the ordinary and proper meaning of the term charged, lands charged become only auxiliary to the personal estate, which still remains primarily liable. Exoneration of tbe personal estate or subjection of lands to legacies in common with it, is in tbe power of a testator, but is more rare and difficult of establishment.
2. Where there is a general direction that legacies shall be paid, (that is, be paid indefinite, not be paid by executors, or be paid out of a special fund, 6r tbe like,) accompanied by something in tbe text or context, whence may be inferred that they shall be paid yirsi,- or that the devises shall be enjoyed after their payment. (Toot vs. Vernon 1 Vern. 708; Clifford vs. Lewis, 6 Mad. Rep. 33; Donce vs. Torrington, 2 Myl. & Keen, 600.)
Under this bead, with confirmation drawn from tbe sixth head, falls also ti.e case of Mirehouse vs. Scaife, (2 Myl. & Or. 695,) greatly relied on here by tbe appellees. In it Vice Chancellor Shad well overruled a demurrer upon one of two grounds that were argued, and Lord Chancellor Cottenham, upon appeal, concurred in overruling, but favored the other ground. The Lord Chancellor founded *262 his opinion upon the terms rest and residue, used in the sense of the estate diminished by debts and legacies, “ coupled with the direction to pay his debts and legacies.” In the devise following a direction to pay debts and legacies he considered the case to be like Hassell vs. Hassell, (2 Dickens, 527,) and he answered the observation, that the direction to pay the debts and legacies was only intended to fix a time for the payment of them, by saying that “that, no doubt, was part of the object, but that it was not the whole object, may be inferred from the gift which follows, of the rest and residue of the real and personal estate) which the observation leaves untouched.” The will contained this clause, “It is my will that all my debts, and all the above legacies, be paid and discharged within six months after my decease, and all the next residue of my estate, both real and personal, lands, messuages, and tenements, I give unto Mary Newton, &c.thus in one breath directing payment and showing by what diminution the residue should be ascertained. Amongst the legacies was the bequest of a field called Gillfoot. The bill alleged the insufficiency of the personal estate, and this the demurrer admitted.
3. Where there is a direction that legacies shall be paid by the executor, and a devise to him, the land' so devised is charged with legacies.
Under this head fall some cases that have been urged by the appellees. (Aubrey vs. Middleton, 4 Vin. Ab. 460, Charge D. Pl. 15; 2 Eq. Ca. Ab. 429, Pl. 16; Alcock vs. Sparhawk, 2 Vern. 228, 1 Eq. Ca. Ab. 298, Pl. 4.
To this, as well as the second head, may also be referred Hassell vs. Hassell, and from this may be had confirmation of the decision made in Cole vs. Turner, (4 Russ. 376,) which the appellees have presented as almost identical with the case in hand, and which will be further noticed under the sixth head. (Hennell vs. Whitaker, 3 Russ. 343; Brattewaite vs. Britain, 1 Keen, 206.)
*263 The principle involved in this head is that by the devise to the executor means were afforded to him for payment, and by the direction a condition imposed upon his acceptance ; this does not apply where the devise is to one only of several executors. (Warren vs. David, 2 Myl. & K. 49; Wasse vs. Herlington, 3 Myl. & K. 495.)
And it may be inferred that a power in the executor, to raise money for legacies from lands devised to him in trust, is essential to charge such lands with legacies. (See Dover vs. Gregory, 10 Sim. 393; Powell vs. Robins, 7 Ves. 209.)
4. Where the real and personal estate are blended together, and indication given that from the mass legacies shall be paid. Bench vs. Biles, (4 Madd. R. 187,) where^ after a wife’s enjoyment of real and personal estate as one fund for her life, that fund, diminished by legacies, was to be divided.
5. Where the legatee stands in a position entitled to peculiar favor, as where the legacy has been given in satisfaction of a creditor’s debt, a widow’s dower, the legatees claim to devised land or other meritorious right, such as in England a younger child’s right to a portion. (Webb vs. Webb, 2 Eq. Ca. Ab. 504, Pl. 42; Kightley vs. Kightley, 2 Ves. Jun. 328; Van Winkle vs. Van Houten, 2 Green’s Ch. R. 192, New Jersey.)
6. Where, at the making of the will, the testator must have known that the legacies could not be paid without the aid of the real estate.
This head is plainly illustrated by the case of Nichols vs. Postlethwaite, (2 Dall, [Pa.] 131.) To it, also, may be referred the case of Hassinelever vs. Tucker, (2 Binn. 525,) where it is said that “ the personal estate was nominally adequate to pay debts and legacies, but was really insufficient,” and “ if the legacies were not to be paid out of the land, they were a mockery of benevolence.”
And under this head, in connection with the third, may *264 be found distinctions between the case of Cole vs. Turner, (4 Russ. 376,) before mentioned, and the case now in hand. There, it is said, that “ the sum for which the copyholds had been sold, was in fact the only fund out of which the annuity to the widow and the legacy and annuity to her daughter could be satisfied ” and there is nothing to repel the presumption that such was the condition of the estate when the will was made. There, too, a power of sale, almost discretionary was given to the executors, to whom, after the gift of pecuniary legacies, the residue of everything real and personal was given in trust for four children by a former, marriage.
Under this head, as well as the second, may be found circumstances confirmatory of the effect which was given to rest and residue in Mirehouse vs. Scaife, above mentioned.
The case now in hand cannot be fairly brought under either of these heads. Here there is no direction that legacies shall be paid, besides the incidental references to payment that are contained in instructions concerning the time and mode of payment. By the gift of a pecuniary legacy, and no more, a testator signifies his intent that it shall be paid, that it shall be paid by the executor, and be paid out of the fund which goes to the executor for its payment, the personal estate not specifically bequeathed.
Here there is no devise to the executors. They are, to be sure, the same persons to whom, as trustees for the granddaughter, the residue is given; but from the devise to them no means for payment of legacies could have been derived, without power in them, to sell lands for that purpose If the legal title remained in them, as certainly it would have done if the granddaughter had been a married woman, no power to sell lands was expressly given to them, and none could be implied without plain manifestations of the testatrix’s intent to that effect. Where lands have been plainly charged with debts, although the devise of them to *265 trustees is expressed to be for other purposes, the trustees may sell for payment of debts, tbe power being held to be included in the charge. (Ball vs. Harris, 4 Myl. & Cr. 264; Shaw vs. Barrer, 1 Keen, 559.) But it would be going beyond the strongest case on this subject to imply the charge first and from that to imply the power; and still more extravagant would it be to argue in a circle by inferring the charge from the power, and the power from the charge.
Here there is no blended fund created by the will from which, according to the intent of the testatrix, legacies shall be paid. In fact, blending for the first time could have been contemplated, when the residue as one estate should come to the use of the granddaughter. Before that it could not have taken place, for before that the two kinds of property, according to the law which the testatrix must be supposed to have understood, must necessarily have continued to exist separately — the personal in the bands of the executors as legal owners subject to debts and legacies, the real in the devisees to whom subject sub modo by our law to debts, and subject to the charges and trusts contained in the will, it passed at the death of the testatrix. (Hull vs. Hull, 3 Rich. Eq. 91.) In Cole vs. Turner, above mentioned, the Master of the Bolls declared that “the freehold, copyhold, and leasehold estates are not devised to the trustees, but the rest and residue of those estates, that is, what remains of those estates after some prior purpose;” this consists with the supposition of a power in the executors to sell and pay legacies, so as to fix the residue which they should hold as trustees for the four older children, but is not reconcilable with our case, where clearly all the real estate passed under the residuary clause to the devisees, whether charged or not.
Besides the words “rest and residue of my estate, real and personal,” nothing in the will now before us affords any ground for implying that the testatrix intended to *266 charge the real estate with the legacies; and after much search, I have found no case in which these words occurred, and an implication of charge on the real estate was raised, where I could not discover some confirmatory circumstance. The words are ambiguous; they occur here in a clause, the purpose of which was to give, not to charge; they indicate something less than the whole, but do not direct what deductions shall be made, or in what way deductions shall affect the two kinds of property. (Lupton vs. Lupton, 2 Johns. Ch. 614.) Their meaning may be what shall remain ' after specific dispositions previously made, or after payment of debts and expenses, or after payment of debts, expenses, and legacies previously given; and if the last, this payment may have been intended to be as the law directs — from the general personal estate, and that only, — or to be from a mixed fund, composed of real and personal estate, which are to contribute rateably, or from such mixed fund charged as one entirety, without regard to the sources from which it proceeded. There is nothing which renders any construction preferable to that which interprets the words as if they had been, everything else that Lown, subject to the deductions which the law makes, that is, all the real estate, and the residue of the personal. The testatrix must be presumed to have known the difference between specific and pecuniary dispositions, as well as the fund from which, without some indication of her contrary intention, the legacies would be paid.
The .appellees lay great stress upon rest and' residue as necessarily implying diminution, and diminution effected by deduction of legacies, the only thing in the will that precedes. If so far right, they are not helped, unless they can further establish that the two kinds of property are blended into one mixed fund for payment of legacies. The blending I do not think can be fairly implied. If it could be established, it would, perhaps as matters now are, be comparatively unimportant to the parties, whether the *267 realty was charged as an auxiliary, or rateably, or indiscriminately with the personalty. In settling a principle of construction, it may not, however, be amiss to look to what would have been the result if the heir and residuary devisee had been different persons, and large real estates had, at the cost of the personalty, been acquired after the making of the will. These subsequently acquired real estates would have descended to the heir, and would in equity have been liable to debts, after the personal property bequeathed in the residuary clause, but before the real estate there devised; (Pell vs. Ball, Sp. Eq. 518;) but they would not have been at all liable to the legacies, which would, under the construction contended for by the appellees, have had a right to seek satisfaction from the lands devised, as well as from the residue of the personalty. It must be remembered that throughout this opinion I ignore the before mentioned Act of 1858; (12 Stat. 700;) also, that the Act of 5 Geo. II. c. 7, (2 Stat. 571,) under which an order in the liability of various classes of property to debts has been fixed different from what prevailed in England, does not extend to legacies, ami that a general direction for payment which, as to debts, is here superfluous and unimportant, is still of much avail as to legacies. (Warley vs. Warley, Bail. Eq. 405-410; 2 Jarm. on Wills, 546; Pell vs Ball, Sp. Eq. 519; Henry vs. Graham, 9 Rich. Eq. 100; Brown vs. James, 3 Strob. Eq. 24.)
It should not be deemed strange that a difference is recognized between real and personal property in respect to their liability to the payment of legacies, when both are given by the same clause in the same residue. From early times, and in many respects, the law has made distinctions between the two kinds of property under tne same words embracing both, as concerning limitations, ever since the case of Forth vs. Chapman, (1 P. Wm. 665,) concerning the rights of heir and residuary legatee in case of lapse, Cheves vs. Haskell, (10 Rich. Eq. 534;) concerning the order in *268 which they shall meet debts. (Farmer vs. Spell, 11 Rich. Eq 541; Loyd vs. Loyd, 10 Rich. Eq. 469.) The distinction between the heir and the devisee and the executor, runs throughout the law, and has been adverted to several times above. It would be observable in legal titles and modes of proceedings, even if both were expressly blended into a common mass for payment of legacies. That the testatrix herself looked to the distinction is shown by the words of the residuary clause respecting her future acquisitions, but we are bound to presume that she knew that these words would apply only to her personal estate, whilst the devise would be confined to the realty, specific and fixed as it was at the making of the will.
In the conclusion, unfavorable to the pecuniary legatees in the first ground of appeal, .which has been attained from the words of the will, this Court is strengthened by what have been called the extrinsic circumstances. Eesort to these has been frequently condemned, and is particularly deprecated by Sir John Leach, V. C., in the case of Parker vs. Fearnley, (2 Sim. & Stu. 592.) This case has been criticised because it departed from the course of decision, (2 Jarm. on Wills, 526,) which had sustained the charge of real estate devised, where the devise followed a general direction that legacies should be paid; but in the view taken by the Yice Chancellor, the express charge upon the residue of the personalty rebutted the implication of a charge upon the realty, as had been held in the case of Davis vs. Gardener, (2 P. Wm. 187.) In this view the condition of the estate was unimportant, and therefore, perhaps, it was the more readily treated as unfit for consideration.
Every Court in the construction of a will is required to place itself in the situation of the testator, (Wigam on Wills, PI. 76-80,) with knowledge of the circumstances that surrounded him. The extrinsic testimony, necessarily *269 admitted to give this knowledge, is not allowed to show the testator’s intention as an independent fact distinguished from the contents of the written instrument, but may show the meaning of what is said in that instrument. Where, upon the face of the will, there is an ambiguity, which the light of surrounding circumstances may explain without varying the instrument, the exclusion of that light would be the rejection of the means of doing justice with safety. The opinion given by Lord Tharlow, upon the rehearing in the case of Tonnereau vs. Pointz, which was cited upon another point, is a leading authority on this subject; and in our own case of Rosborough vs. Hemphill, (5 Rich. Eq. 105,) Chancellor Johnston has clearly laid down the principles which authorize and limit the admission of explanatory circumstances. (See Pell vs. Ball, Sp. Eq. 66-80.)
The state of the family and condition of the property may be looked to. Under the state of the family may come the ages and other particulars respecting children and other relations, and from that may be drawn any inferences, in regard to the meaning of doubtful expressions, which arise without dangerous speculation and conjecture, but it would be inadmissible to undertake to graduate the affections of a testator toward the several members of his family, for in accommodating his intent to our notions of duty and probable inclination, we would forget that the law imposes no checks upon whim and perverted feelings, but inquires what is the will, not what it should have been. The condition of the property may, however, be more safely considered. Everybody instantly admits that where pecuniary legacies have been given, and the whole estate was real and has been devised, there must have been an intent to charge the devises with the legacies; and in many of the cases respecting this question of charging the real estate, the insufficiency of the personal estate appears to have entered into the inquiry, and to have been influential, however im *270 proper for consideration it may have been thought. JS con-verso, the ample sufficiency of the personalty is a strong circumstance to exclude the implication from doubtful words of an intent to charge the realty. In the case before us, it is fair to conclude that the testatrix did not mean to charge her real estate with the legacies, because her words, if doubtful, should not receive such construction as to indicate her intention to guard against an insufficiency of her personal estate, not even remotely probable when she made her will. Much more probable than this it is, that looking to the very tender ages of the two principal objects of her bounty, the comparative smallness of the legacies given to other persons, the long time before large payments would probably be required, and the powers usually exercised by executors over planting estates, she expected that debts and legacies would be paid from the annual profits of her plantations, and the estate unincumbered pass to her granddaughter when she came of age or married.
Upon the questions which have been discussed concerning devastavit and abatement, this Court has not been sufficiently informed of the facts, and has formed no opinion.
The Chancellor’s decree, so far as it holds the pecuniary legacies and annuities to be charged upon the land devised under the residuary clause of Mrs. Laurens’ will, is reversed, upon other points it is set aside, and further inquiry is directed.
The order by which matters were referred to the Master is renewed, with the instructions contained in this opinion; and with leave for him to report special matter.
Decree reversed in part, other part set aside, and further inquiry directed.
Dunkin, C. J., and Glover, J., concurred.

 Under the twenty-fourth section of the English Wills Act, (1 Viet. c. 26,) which makes the will speak as if it had been made immediately before the death of the testator, and is, therefore, in effect the same as our Act of 1858, residuary devises of land are held to be specific. Hensman vs. Fryer, Law Rep. 3 Ch. Ap. 420; Gibbins vs. Eyden, Law Rep. 7 Eq. Cas. 374.