## Brisben's Appeal.

1. A testator directed his coal-land to be sold, but not within two years unless for at least $100 per acre; he gave to a daughter one-half the income of a farm, payable half-yearly by his executors till she should "receive her share of the proceeds of sale" of the coal-land, and then her half of the other income to cease, but if the gift of the income "should fail or be defeated," the executors to pay her semi-annually in lieu thereof $100 until she receive her share of the proceeds of sale" of the coal-land, "but when she receives any part of her share from" the coal-land, her "semi-annual payments shall be reduced by an amount equal to the interest of what she shall have received of the said proceeds of sale" of the coal-land. He gave the residue of his estate, real and personal, to this daughter and two others. His personal estate was insufficient to pay his debts, and the farm was sold for his debts; the coal-land was leased, and the rents were the only income of the estate. *Held*, that by the blending of real and personal estate in the residuary clause of which the coal-land was part, the daughter's annuity was a charge upon it, and payable from those rents.

2. Technical words are to be construed according to their technical meaning, unless there be some expression which clearly indicates a contrary intention.

3. Gallagher's Estate, 12 Wright 121, recognised.

January 22d 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Northumberland county*, in the estate of Hugh Bellas, deceased, upon exceptions to the account of Simon P. Wolverton, administrator *d. b. n. c. t. a.* of said deceased.

The decedent died previously to the 7th of November 1863, having made his will and several codicils which were proved on that day. The executors named in the will having renounced, or at their own request been discharged, letters of administration *d. b. n. c. t. a.* were issued to Simon P. Wolverton, Esq.

By his will the testator gave to his wife for life the homestead property and other real and personal property, and made the following devises.:—

" 2. I empower the persons hereinafter named as my executors of this will to sell my tract of coal-land at the town of Shamokin, in Coal township, surveyed in the warrantee name of William Green, containing about three hundred and fifty acres strict mea-

sure, with power to them to lease and to sell the same, &c., * * * but the said tract shall not be sold within two years from my decease unless it be sold for the price of at least one hundred dollars per acre, strict measure, &c.

"6. I give and devise to my daughter, Ann Caroline Rodrigue, the proceeds of the contract of sale, &c. * * * I also give and bequeath to her, the said Ann, the one-half part of the rents, issues and profits of my farm, saw-mill and other buildings and improvements with the timber land on and near Penn's Creek in Limestone township, in Union county, to be paid to her half-yearly by my executors until she receive her share of the proceeds. of sale of my said tract at the town of Shamokin, in the name of William Green, and then said half part to cease to be received by her, but if this gift of the half of said proceeds should fail or be defeated, my executors shall pay to the said Ann C. Rodrigue, semi-annually, in lieu thereof, the sum of one hundred dollars until she shall receive her share of the proceeds of sale of said William Green tract, and no longer; but when she receives any part of her share from said William Green tract, her share of the rents, issues and profits or said semi-annual payments shall be reduced by an amount equal to the interest at six per cent. per annum of the part she shall have received of said proceeds of sale of the William Green tract.

"8. I devise in fee to my three daughters, Eliza, Ann and Amelia, as tenants in common, to take effect immediately after the death of my wife, my homestead where I reside, above described and devised to my wife, for life, with the appertenances.

10. "As regards the residue of my real and personal estate, not above disposed of, I devise and bequeath it to my three daughters, Eliza, Ann and Amelia, in fee as tenants in common, viz., share and share alike (subject to the payment of my debts and funeral expenses and expenses of administration, and expenses of my real estate), to be by my executors divided among them fairly, either in the realty if practicable or in the proceeds of sale thereof, &c. * * *

"11. I hereby constitute and appoint as the executors of this my last will and testament, my son-in-law, Charles Pleasants, &c., and I give them, or any two of the survivors of them, if one refuse to act, full power to lease, take possession, mortgage, make partitions and sell by either public or private sale as they may deem fit and judicious, all or any part of my estate, real or personal (except so far as the preceding would be inconsistent with the power), and upon their sales to make deeds of conveyance for the property they sell, either with or without any action or authority of the Orphans' Court, as to them may seem most wise and most beneficial to my descendants and devisees or legatees; and in case it be necessary to raise money by sale of real estate for

payment of debts or other purpose, I direct that my coal tract in the name of William Green be last sold, unless it can be sold at the price hereinbefore stated, and my other real estate shall be sold for that purpose, in the order my executors judge most advantageous, excluding the homestead above mentioned, and if it happen that only one of the persons named as executors should accept the office, or survive, then the power above given to sell real estate, shall be executed by him, but only on the written request of my three daughters or some two of them."

By a codicil dated November 3d 1860, he provided thus:—

"I make the following changes in my last will, dated the 10th day of October, A. D. 1860. I devise in fee to my friends, the Hon. Alexander Jordan, &c., and the survivor of them, as trustees, all the real and personal property and estate to which my daughter Ann C. Rodrigue would be entitled by my said last will, and these trustees and each of them are required to apply all the proceeds and profits thereof to her personal use and support and benefit, from time to time, as she may have need and require when by her demanded in writing for herself and her children, but not to be applied or used otherwise."

Joseph Priestly afterwards became trustee for Mrs. Rodrigue.

Mr. Wolverton, administrator, &c., filed a second account of his administration, in which he charged himself with coal-rents, rents of houses, and interest on proceeds of real estate, and amongst other things claimed credit for two items of $100 on the 30th of April and 30th of September 1869 respectively, each stated "Joseph Priestly, trustee of Mrs. Ann C. Rodrigue, one semi-annual payment under the will."

Exceptions to these payments were filed, and were referred with the account to W. J. Greenough, Esq., as auditor.

He found that more than $2000 of the charges had been received by the accountant from rents for coal taken from the "William Green" tract, and that the payments for Mrs. Rodrigue were "wholly" from the rents of that tract.

The personal estate of the testator was insufficient to pay his debts, and the Penn Creek property, of which one-half the rents and profits were devised to Mrs. Rodrigue, was sold under a mortgage by which it was encumbered. The "William Green" tract was unsold.

Mrs. Rodrigue had received her share of the rent of the coal tract after deducting her annuity.

The auditor reported that the annuity to Mrs. Rodrigue had been properly paid out of the rents of the "William Green." tract. The report was confirmed by the Orphans' Court, Jordan, P. J.

Mrs. Amelia S. Brisben, one of the daughters and residuary legatees of the testator, appealed to the Supreme Court.

She assigned for error the decree of confirmation:—

[Brisben's Appeal.]

1. Because the devise to Mrs. Ann C. Rodrigue of the one-half part of the rents, issues and profits of the farm, &c., on Penn's Creek, Union county, did not fail nor was it defeated in the sense of the will, and on the sale of said farm for the payment of debts, &c., she did not become entitled to semi-annual payments of $100 each, but to the value of the one-half part of the said rents, issues and profits at the time of the said sale, to be paid semi-annually each year until she should receive from the proceeds of sale of the William Green tract an equivalent therefor.

2. Because the leasing of the William Green tract reserving a specified sum of money for each ton of coal mined and taken therefrom by the lessees, was in reality a sale of the coal in the ground at that price, and in fact a sale of part of the soil and freehold of the William Green tract, and therefore, no matter whether the devise to Mrs. Rodrigue of one-half of the rents, issues and profits of the Union county farm had failed or been defeated, in the sense of the will, before the 30th of April 1869 or not, the payment then made to her trustee, as also that made on the 30th of September 1869, should have been diminished by the amount of the interest on the excess of the proceeds from the William Green tract over and above $700 (the amount of the semi-annual payments previously paid to her trustee without objection), from the times the respective parts thereof were received, to the date of each of said payments.

3. Because, if the leasing of the William Green tract, as above mentioned, was not a sale of part of the soil and freehold, and if the payments stipulated in the lease to be paid by the lessees were rents, then such rents having accrued after the death of the testator, were no part of the residue of his estate devised to his daughters, or of his estate at all, and the said devise or legacy to Mrs. Rodrigue was not payable out of them.

*J. W. Comly*, for appellant.—The devise of the rents and profits of the Penn Creek property was a devise of the land: Van Rensselaer *v.* Dunkin, 12 Harris 252. If Mrs. Rodrigue could not get her income from the land designated, she could not from the residuary estate, the specific legacies not being charged on the land: Mellon's Appeal, 10 Wright 165. The rents of the Green tract were not part of the residue: Adams *v.* Adams, 4 Watts 160; McCoy *v.* Scott, 2 Rawle 222; Miller's Appeal, 10 P. F. Smith 404.

*S. P. Wolverton*, for appellee.

The opinion of the court was delivered, January 29th 1872, by SHARSWOOD, J.—The testator was a lawyer of distinguished learning and ability—one of the foremost men at the bar in Northern Pennsylvania, and Lord Coke informs us that "it is observed

for a special blessing of Almighty God that few or none of that profession die *intestatus et improles*, without will and without child." The will of Mr. Bellas is drawn with great care and skill and is so clearly expressed at least as to the questions raised upon this record as to leave no doubt as to his intention. Indeed he has left construction no room to work, and for that reason it has not been found easy to frame any contention upon the subject. It is very plain that he meant to leave to his daughter, Mrs. Rodrigue, at all events, an annual sum toward her maintenance beyond any contingency. He had, no doubt, very good reasons for so distinguishing her from his other two daughters. For this purpose, besides other bequests to her and her children, he makes the provision out of which the controversy in this case has arisen. He thereby bequeathed to her one-half of the rent of a farm and sawmill in Union county, to be paid to her half-yearly until she receives her share of the proceeds of sale of his tract of coal-land at Shamokin, standing in the name of William Green, adding, "but if this gift of the half of said proceeds should fail or be defeated, my executors shall pay to the said Ann C. Rodrigue semi-annually, in lieu thereof, the sum of one hundred dollars until she shall receive her share of the proceeds of sale of said William Green tract and no longer; but when she receives any part of her share from said William Green tract, her share of the rents, issues and profits or said semi-annual payments shall be reduced by an amount equal to the interest at six per cent. per annum of the part she shall have received of said proceeds of sale of the William Green tract." The property in Union county was sold for the payment of debts, and it was clearly for this very contingency that Mr. Bellas meant to provide. It is evident that in the words of the will, the gift of the half of the proceeds of that property failed or was defeated. The will then provides that an annuity of two hundred dollars shall be substituted " in lieu thereof." This annuity was to be paid until Mrs. Rodrigue should receive her share of the proceeds of sale of the coal-tract, and upon her receipt of any part, it was to abate proportionally, that is, " by an amount equal to the interest of six per cent. per annum of the part she shall have received of said proceeds of sale."

The coal-tract having been leased at a certain rent, and Mrs. Rodrigue being in the receipt of her share of the rent, it is now contended that her annuity should be proportionably reduced; for the reason that the rent being a compensation for the coal mined, which is a part of the land itself, and that which constitutes its chief value, the rent so received ought to be construed as forming a part of the proceeds of sale of the tract. The testator had empowered his executors " to lease and to sell" it, but with this restriction, that it should not be sold within two years unless for the price of at least $100 per acre. He evidently contemplated

[Brisben's Appeal.]

the probability of a lease, and if he had intended that the annuity of Mrs. Rodrigue should be reduced as soon as she received her share of the rents, he would naturally have said, "proceeds of sale or lease." He uses the words "proceeds of sale" three times in this clause, and in immediate connection with the words "rents, issues and profits" of the farm and saw-mill in Union county; for if that gift had not been defeated, the payment of one-half of the rents to Mrs. Rodrigue would have been subject in like manner as the annuity to be reduced in the method indicated. Technical words are always to be construed according to their technical meaning, unless there be some expression which clearly indicates a contrary intention; and surely this is a rule which ought to be applied to the will of a lawyer.

The William Green tract being a part of the residuary estate of the testator, under a clause blending both his real and personal estate together, the annuity in question was by implication a charge upon it, and was therefore properly paid out of the rents of that property. It is enough on this point to refer to Jane Gallagher's Appeal, 12 Wright 121.

> Decree affirmed, and appeal dismissed at the costs of the appellant.