# Davis's Appeal.    Hanbest's Estate.

1. Where a testator charged certain annuities upon his estate and by the terms of his will blended his realty and personalty together, it is to be concluded that it was his intention to charge the real estate with the annuities, upon a deficiency of the personal estate.

2. Where, therefore, certain devises of a testator to charitable uses were made void by statute and by the language of his will, his real and personal estate were mingled together and made a residuary fund; when the heirs at law took the property thus designed for charitable uses, they took it with this fixed character stamped upon it, and annuities charged upon the testator's estate were charged upon the real estate thus cast upon the heirs.

[Davis's Appeal. Hanbest's Estate.]

3. In a proceeding under the Act of 23d of February 1853 (Pamph. L. 98, Purd. Dig. 451), an appeal lies from a decree of the Orphans' Court refusing to entertain a petition of an annuitant where there was no inquiry into the merits of her application.

4. McCredy's Appeal, 14 P. F. Smith 428, distinguished.

January 26th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Orphans' Court of *Philadelphia county*: Of January Term 1875, No. 186.

This was the appeal of Anna Maria Davis from the decree of the court dismissing her petition, praying that certain annuities charged by T. P. Hanbest, deceased, in his will, upon his estate, might be secured by setting apart a portion of the real estate of testator, the personal estate being insufficient to support said annuities.

Thomas Passmore Hanbest died on the 7th of August 1873, leaving a will dated the 30th of July 1873, and a codicil dated the 5th day of August 1873. By this will he directed his brother, Philip, to collect the rents of his real estate and the interest of mortgages, and pay the same over to his executor, devising to him, also, certain real estate, and giving him $100 per month during his life, to be paid by his executor. To his sister Emily, he gave $100 per month during life. To his sister Julia, $100 per month, and devised to her, also, certain real estate. After several other legacies and annuities to various relatives, the will contains the following clauses:—

" 20. I give and devise to the Swedes Church of Kingsessing, Philadelphia, known and called, I believe, by the name of St. James' Church, situate on the Darby road at or near the corner of Sixty-ninth street, all the rent and income of my store at Darby road and Ann street, now in the tenure of one —— Johnson, and kept by him as a store for the benefit of all widows over forty years of age who may live within the old bounds of Kingsessing, and I give the same to the trustees and the minister of said church for ever, and payable one year after my death.

" 21. I give to Mrs. Anna Maria Davis, widow, the sum of three thousand dollars per annum, payable quarterly by my executor, during her natural life, which sum is in full of all claims and demands of every kind which she may have for my board, and also for all her kind services rendered to me during my present illness or in any other way whatever, and which quarter will begin with my death.

" 25. After the payment of the above legacies, and the expiration of all the life-estates where I have given annuities, I do will, and direct my executor to erect upon my estate, known as the Old Homestead, and situate on the easterly side of the Darby road, in Kingsessing, where my father lived and where I was born, a suitable building, not to cost over fifty thousand dollars, for the benefit

of old men and old women who are infirm or crippled, and who are not able to earn a living, and for this purpose I do give and apply all the rest and residue of my estate, both real and personal and the increase of the same, and all the rents, interest, issues and profits thereof, for the support and maintenance of the same. And for the purpose of carrying out this my intention, I do authorize my executor to get such laws passed by the legislature as may be necessary to carry the same into full effect, or to apply to the proper court to carry the same into effect, as may be deemed best for ever."

Isaac Norris, Esq., and Philip Hanbest, the brother of testator, were made the executors of his will. The proceedings in the court below commenced by a petition which, on behalf of Anna Maria Davis, after a reference to the foregoing portions of the will, set forth in substance :—

"That by will the testator gives to your petitioner, Anna Maria Davis, the sum of three thousand dollars per annum, payable quarterly during her natural life ; that the annuities of said will are charged upon all his residuary estate, both real and personal; that the personal estate of said testator is not sufficient to support said annuities ; that said annuities might be amply secured by setting apart a portion of said real estate, and that the remaining residuary real estate, after setting apart such portion as may be ample security for the payment of said annuities, may be and remain discharged and exonerated from the lien and charge of the same."

She therefore prayed the court to order a citation to issue to show cause why such relief might not be granted. The executors answered, that in their opinion it was necessary that the whole of the real and personal estate of the testator should remain in their hands and under their control for the purpose of forming a capital or principal to meet said annuities from time to time as they became due and payable. They also suggested the appointment of an auditor to audit the accounts of the executors, to hear all the parties interested in the estate who could make a full report on which the court would be able to make a proper decree.

Sarah Hanbest, guardian *ad litem* of three minor children, heirs at law, and James Jameson in his own behalf as assignee of Thomas P. Hanbest, one of the heirs of decedent, made answer that the real estate of the said decedent was not charged with the payment of the legacies or annuities mentioned in the will, because by the terms of the will they are not so charged.

The court dismissed the petition and in an opinion said :—

"The dispositions of this will which create trusts for charitable uses, as set out in the twentieth and twenty-fifth clauses, are contrary to the eleventh section of the Act of April 26th 1855, Purd. Dig., p. 208, pl. 24, because of the testator's decease within one calendar month after executing his will, and are therefore void. The property thus attempted to be disposed of is made by the sta-

tute to go to the next of kin, or heirs, according to law : Price *v.* Maxwell, 28 Penn. St. 23.

Since the disposition attempted by the testator in the twenty-fifth clause of his will is void, it must follow that there is not any gift or devise of his residuary estate.   The statute annuls every testamentary intention which contravenes it.   There is therefore no residuary estate of the testator, for the testamentary disposition which seeks to create it is a nullity.   The heirs and next of kin come into possession of the property, which the · testator expected to devise or bequeath, not as successors in title under 'the will, but by force of the statute in spite of and against it.   They take not by or through the testator's bounty, but by the written law.   The testator's intentions are annulled, and no inference as to his valid testamentary disposition in other parts of the will can be gathered from them.   In this view, all that was~predicated in argument respecting his intention to charge his legacies and annuities upon his residuary realty, as deducible from a gift and application of his real and personal residuary estate blended, loses its force; the statute has swept away the foundation on which the rules of the law construing the testator's intention thus to charge, must be based, *cessante ratione, cessat ipsa lex.*"

From this decree this appeal was taken.

*A. V. Parsons,* for appellant.—The dismissal of the petition when all the parties were not in court, was erroneous.   The court here declared a bequest for charitable uses void, without giving those who might have claimed it a hearing.   Such a decree cannot be made in the absence of the parties.   But even if these devises for religious or charitable uses were void, the other provisions of the will should have been carried into effect: Miller *v.* Porter, 3 P. F. Smith 292 ; Evans's Appeal, 13 Id. 186.

Now, if the bequests to charities are declared void, which has yet not been done, but by the statute, the residue of the property would, by operation of law, descend to the heirs of the testator ; on what terms or conditions do they take this residue of the estate ?   First, subject to the payment of the debts of the testator ; second, under and subject to the payment of the legacies and annuities : Lanoy *v.* Duke of Athol, 2 Atkyns 444 ; Galton *v.* Hancock, Id. 430 ; Haslewood *v.* Pope, 3 Peere Wms. 323 ; Rider *v.* Wager, 2 Id. 329 ; Oneal *v.* Mead, 1 Id. 693.

All of the estate, both real and personal, was made chargeable with these legacies and annuities, and whether the lapsed devises be real or personal estate, the portion to be paid the annuitants, as designated by the testator's will, must be satisfied : Wigg *v.* Wigg, 1 Atkyns 382 ; Oke *v.* Heath, 1 Ves. Sr. 135 ; Case of the Will of Eleanor Newell, 1 P. A. Browne 311.

It is plain, both by the words of the will and the situation of

the parties, that the land was to be a fund for the payment of legacies, if the personal estate was insufficient: Downer *v.* Downer, 9 Watts 60; Tower's Appropriation, 9 W. & S. 103. When a testator by his will blends his real and personal estate, he thereby charges his land with the payment of legacies: McLanahan *v.* Wyant, Adm'r, 1 Penna. R. 96; Witman *v.* Norton, 6 Binn. 395.

*George Tucker Bispham*, for Jameson.—First. The decision of the court below is sustainable on the ground taken by the court, viz., that the residuary devise for charity having failed, there could be no argument in favor of an intention to charge legacies upon real estate based upon that devise. The charge of legacies being a matter of intention, and that intention being gathered from the residuary clause, if the residuary clause failed, there would be nothing upon which to predicate the intention.

Second. The rule contended for by the appellant is, that where there is a blending of realty and personalty in a residuary gift a charge of legacies on real estate is implied. This rule is admitted, but it is subject to the qualification that in order to create a charge there must have been no *prior specific devise* of realty. If there is such a *prior specific devise*, then the rule is the other way and the charge of legacies on real estate does not arise: Gallagher's Appeal, 12 Wright 121.

*H. McIntyre*, for Sarah Hanbest.—No appeal could be taken in this case: McCredy's Appeal, 14 P. F. Smith 428.

*F. C. Brewster*, for Isaac Norris, executor, contended that the decree below should be reversed because,

1. The annuities were charged upon the real estate by the blending of realty and personalty: McCredy's Appeal, 11 Wright 442; Gallagher's Appeal, 12 Id. 121; Okeson's Appeal, 9 P. F. Smith 101; Van Dyke's Appeal, 10 Id. 481; Brisben's Appeal, 20 Id. 405.

2. That the testator's death within the month did not defeat the annuities to private persons.

3. That McCredy's case, 14 P. F. Smith 428, did not apply because that was an attempt to relieve land from the annuity, not to charge it.

Mr. Justice MERCUR delivered the opinion of the court, May 7th 1877.

By the last will and testament of Thomas Passmore Hanbest he gave to the appellant the sum of three thousand dollars per annum, payable quarterly by his executor during her natural life. He devised certain real estate specifically to his brother Philip, and certain other real estate specifically to his sister Julia. He also gave numerous legacies and annuities to various other persons.

Clause 27½ of his will declares, "all my real estate is to be kept

in good order and condition under the direction and care of my brother Philip, and repairs to be made to the same, from time to time, by him, as may be necessary." In clause two it is declared that Philip "is also to have the collection of all the rents of my real estate and interest of mortgages, and pay the same over to my executor." By clause 20, he devised to St. James' Church all the rent and income of a certain store, for ever. By clause 25 he directs his executor, "after the payment of the above legacies and the expiration of all the life estates where I have given annuities," to erect on a specified part of his estate a suitable building, not to cost over fifty thousand dollars, for the benefit of aged, infirm and crippled persons, and "for this purpose I do give and apply all the rest and residue of my estate, both real and personal, and the increase of the same, and all the rents, issues and profits thereof, for the support and maintenance of the same."

Thus, by the terms of his will, the testator blended his real and personal estate. It is a well-settled rule of law that when they are so blended by the testator, the land is charged with the payment of legacies. The reason assigned is, that the whole may take effect, and all the legacies be paid, which is justly supposed to be the intention of the testator, when both funds are put into one: Hassanclever v. Tucker, 2 Binn. 525; Witman v. Norton, 6 Id. 395; McLanahan et al. v. Wyant, Adm'r, 1 Penna. R. 96; Clery's Appeal, 11 Casey 54; McCredy's Appeal, 11 Wright 442; Gallagher's Appeal, 12 Id. 121; Brisben's Appeal, 20 P. F. Smith 405.

In determining whether a legacy is chargeable on land in case of a deficiency of personal assets, the whole will must be taken together: English v. Harvey, 2 Rawle 305. But it may be so charged by implication. No form of words is necessary to produce this effect. Where the intent is manifest it must be carried into execution: Ripple v. Ripple, 1 Rawle 386; Wright's Appeal, 2 Jones 258; Clery's Appeal, supra; Gallagher's Appeal, supra; Brisben's Appeal, supra. The case of McCredy's Appeal, supra, shows how controlling the general implication may be. There the testator devised lands situate in two counties. He also gave to each of his two daughters a specific annuity, and expressly charged upon his lands in one county, a sum sufficient to produce said annuities; yet the court held the general intendment of the will was sufficient to charge it upon the lands in both counties.

No other conclusion can be drawn from the present will than that the testator intended the legacies and annuities should be paid at all events. It was not until after their payment that he directed the building to be erected, and gave the residue of his real and personal estate and the increase thereof for its support and maintenance.

It is contended that this view of the case is incorrect by reason of the testator having died within one calendar month after his

2 NORRIS—23

execution of the will; that by the 25th clause before cited, as well as by the 20th, he created trusts for charitable uses, which are made void by the 11th section of the Act of April 26th 1855, Purd. Dig. 208, pl. 23. It does not appear that those who might claim under these charitable bequests have ever had a hearing in court, so that they might controvert the facts alleged against them. But conceding them to be void, under the statute, without a decree to that effect, what is the result? The property thus sought to be devised, being given to no other, goes to the heirs or next of kin, according to law. The specific legacies, annuities and devises are not made invalid by reason of the charitable uses having failed to take effect: Evans's Appeal, 13 P. F. Smith 183.

It is a well-settled rule in equity that land or money directed to be converted by a last will and testament, is impressed with the character of the particular species of property into which it is to be transmuted. The will and death of the testator work the change, in equity. It requires no act of the executor or trustee to work the conversion. Hence it has been held that a judgment recovered against one of several legatees, among whom the fund, when made from land, was to be distributed, did not bind his interest therein, for he was seised of no estate in the land which could be made the subject of a lien: Allison, Executor, *v.* Wilson's Executors, 13 S. & R. 333; Morrow *v.* Brenizer, 2 Rawle 185; Willing *v.* Peters, 7 Barr 287.

Evans's Appeal, *supra,* shows that this rule of conversion does not depend on whether full effect can be given to the intended charity of the testator. There the testator had directed his real estate to be sold and the proceeds to be applied to a charitable use, but died within a month after executing the will. It was held, that although the gift was void, yet the direction to sell was a conversion. So, in the present case, it is the language of the will which mingles the realty and personalty together and makes them a residuary fund. While the heirs and next of kin now take the property designed for charitable uses, yet they take it with its fixed character stamped upon it. The heir at law, on whom a part of the estate is allowed to descend, would seem to stand precisely in the same condition as if he had taken it as residuary devisee and legatee: McGlaughlin's Executor *v.* McGlaughlin, 12 Harris 20. Both take subject to general legacies. It follows, therefore, that the annuity of the appellant is charged on the real estate cast on the heirs of the testator, and the learned judge erred in holding otherwise.

One other important question remains to be considered. That is, whether an appeal lies from the decision of the court refusing to entertain the petition. The denial is certainly a definitive decree of the Orphans' Court. It is claimed that no appeal lies under the authority of McCredy's Appeal, 14 P. F. Smith 428. It is there

[Davis's Appeal.   Hanbest's Estate.]

said, that no appeal is given by the first section of the Act of 23d February 1853, unless the court has made a decree discharging and exonerating some of the real estate from the lien and charge of the annuity and legacy.   We think that case is clearly distinguishable from the present.   There the application was made by the executors to take from the annuitants some of their security against their will.   Here the annuitants voluntarily offer to release their security on a portion of the real estate.   There it was said what is granted to the residuary devisee is a pure matter of grace or favor. The controlling thought expressed is, that the legal rights of the annuitant shall not be infringed upon by diminishing his security. Here the annuitant waives her rights, and offers to relinquish a part of her security.   That case, however, appears to be, in part, put on the ground that the legislature designed to leave it to the discretion of the court.   The questions of fact had been referred to an auditor to inquire into the circumstances, and to report on the amount and condition of the estate, and upon the expediency and propriety of exempting any part or portion of the residuary real estate, from the lien and charge of the annuity.   The auditor had reported.   All the facts were before the court.   The merits of the case and the propriety of making the order asked for, were duly considered by the court.   The application was refused.   The presumption is, that it was refused on the merits.   There were then strong reasons why this court should not review the discretion exercised by the court below.

The present case is entirely different.   Here there was no ascertainment of the circumstances, no inquiry into the merits of the case, no consideration as to the expediency or propriety of making the order.   The petition was dismissed solely on the ground that the annuity was not charged on the residuary real estate, which we have shown to be an error in law.   In sending the case back for further action we do not mean to interfere with the discretion of the court to refuse the application on a hearing of the merits, but we hold that the annuity is a lien on the residuary real estate, and the appellant is entitled to a hearing on the merits of her application.

Decree reversed and a *procedendo* awarded.