## Rebecca H. Sloan's Appeal. James Watt's Estate.

*Will—Legacies—Real estate—Residuary estate.*

The blending of the real and personal estate in the residuary clause of a will binds the real estate for the payment of legacies by implication, since the "residue and remainder" can only be ascertained after the payment of the debts, legacies and expenses.

*Wills—Interest on legacies.*

Where the settlement of an estate is delayed by litigation with a person who claims to be the widow of testator, the legatees are entitled to interest at the rate of six per cent on their unpaid legacies notwithstanding the fact that the executors were unable to realize more than four per cent in income from the estate.

In such a case the residuary legatees are in no position to complain, for the estate is charged with the payment of the debts and the pecuniary legacies first, and not until this is done is the residue ascertained or the extent of their interest in the estate determined.

*Will—Charitable gift—Legacies—Codicil.*

Testator gave a gift of a sum of money to a charitable institution. Fifteen months afterwards he executed a codicil by which he gave the same sum to a trustee to pay the income thereof to two persons for their lives, and upon their death to pay the principal to the charity. The subject was introduced in the codicil by the words "I hereby annul and revoke the bequest" to the charity, and then followed immediately the words "and instead thereof I give and bequeath" to the trustee, etc. Within one calendar month after the execution of the codicil, testator died. *Held,* that notwithstanding the use of the words "revoke," "annul," and "instead thereof," the codicil did not revoke the bequest to the charity, but simply postponed its time of payment, and that the gift to the charity was therefore not affected by the act of 1855.

Argued March 29, 1895. Appeal No. 118, Jan. T., 1895, by Rebecca H. Sloan, from decree of O. C. Phila. Co., Jan. T.,

1887, No. 202, on exceptions to adjudication. • Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that testator, James Watt, died
on April 28, 1886. His will is dated Jan. 3, 1885 ; his codicil
is dated April 12, 1886. He left no issue or wife to survive
him. Testator by his will gave legacies to the amount of about
$100,000. His personal estate amounted to about $65,000. His
real estate, not specifically devised, was estimated to be worth
about $75,000. The material portions of the will were as fol-
lows :

" (14) *Item.*—I give and bequeath to the Presbyterian Or-
phanage, in the State of Pennsylvania, the sum of seven thou-
sand dollars to build a cottage for a school, and to be named the
Findlay Highland Home.

" (18) *Item.*—I give, devise and bequeath the rest, residue
and remainder of my estate, real and personal, to include also
every legacy and devise aforesaid that may lapse in my life-
time to my said three sisters, and to the survivor or survivors
of them, to be equally divided among them, if more than one,
share and share alike.

" (21) *Lastly.*—I nominate and appoint the Pennsylvania
Company for Insurances on Lives and Granting Annuities, of
said City of Philadelphia, to be the executor of this, my last
Will and Testament : and I hereby authorize and empower such
executor to sell and dispose of all my real estate except the
real estate herein specifically devised at public or private sale,
whenever said executor will deem it prudent so to do, and to
execute and deliver good and valid deed or deeds to the pur-
chaser or purchasers thereof, in fee simple. And the purchaser
or purchasers shall not be required to see to the application of
the purchase money."

The codicil was as follows :

" Codicil to the last Will and Testament of James Watt, of
the City and County of Philadelphia, and State of Pennsyl-
vania, late a miller, and being in ill health, but of sound mind
and memory. The said last Will and Testament bears date
the third day of January, in the year of our Lord one thousand
eight hundred and eighty-five.

" I hereby annul and revoke the bequest of seven thousand dollars to the Presbyterian Orphanage in the State of Pennsylvania, and instead thereof I give and bequeath to the Pennsylvania Company for Insurances on Lives and Granting Annuities, of said City of Philadelphia, the sum of five thousand dollars in trust to invest the same in good security or securities at interest, and to pay half yearly the interest or income of said sum so invested to Jacob Michael, of said City of Philadelphia, late a miller, for and during his natural life, and on and after his decease to pay said principal sum of five thousand dollars to the Presbyterian Orphanage in the State of Pennsylvania aforesaid to build a cottage for a school, and to be named the Findlay Highland Home.

" And I give and bequeath to the Pennsylvania Company for Insurances on Lives and Granting Annuities of said City of Philadelphia the sum of two thousand dollars in trust to invest the same in good security or securities at interest, and to pay half yearly the interest or income thereof to Josephine Halbach, of the City of Reading, in said State of Pennsylvania, widow, for and during her natural life, and from and after her decease to pay said principal sum of two thousand dollars to the Presbyterian Orphanage in the City of Philadelphia aforesaid to build or aid in building said cottage for a school, and to be named the Findlay Highland Home.

" And I desire my said Will to stand confirmed in all other respects."

After the death of the testator, and pending the litigation in the estate, the executor collected $25,000 from rents of residuary real estate.

The court in an opinion by PENROSE, J., entered the following decree :

" And now Nov. 19, 1894, it is ordered, adjudged and decreed as follows :

" 1. So much of the items in the account as are rentals received from the residuary real estate, less all credits claimed for the payment of taxes and expenditures by the accountant in connection therewith and commissions claimed thereon, is awarded to the residuary devisees under the will of the decedent.

" 2. The sum of $2,947.21 being the net amount in the

hands of the accountant arising from the sale of a part of the residuary real estate by the executors under the power in the will is awarded towards the payment of any amounts due on legacies if the personal estate be insufficient to pay the same as herein decreed, it appearing that such legacies are by the will made a charge on all the residuary real estate of the decedent.

"3. Interest at six per cent per annum from the date of the death of the decedent shall be paid on all legacies given to the accountant in trust, and the amounts computed and here awarded upon the said respective legacies shall be paid directly to the parties beneficially entitled thereto, and not to the accountant as trustee for such parties. Interest shall be paid on all other legacies at six per cent per annum from and after the expiration of one year from the date of the death of the decedent.

"4. The principal of the personal estate shall first be applied to payment of the principal of the several legacies, pro rata, and accumulated income from the personal estate shall be separately applied in a similar manner to the payment of interest on the several legacies.

"5. It appearing that certain payments have been made by the accountant by way of compromise of the claim of Mary Elliott, claiming before the court to be the widow of the decedent, and such payments having been made upon orders upon the accountant given by certain legatees to make such payments and charge the amounts thereof against the distributive shares of the respective legatees, it is directed that in the computation of interest upon the said legacies interest shall cease upon such payments from the date at which the same were made, except in the case of Josephine Cavett (otherwise Holbach), whose order upon the accountant was conditioned upon payment to her of interest to the date at which she shall receive her accrued interest under this decree.

"6. The gift to the Presbyterian Orphanage as modified by the codicil is not void, but stands good and is payable as so modified, pro rata, with the other legacies.

"7. It appearing that the estate has been continuously in litigation until the present time, no penalty is due the commonwealth upon the collateral inheritance tax, and interest is

payable to the commonwealth thereon only to the extent that the accounts show it to have been earned.

*Errors assigned* were, among others, paragraphs 2, 3 and 6 of decree, quoting them.

*Francis Rawle* and *Edward Otis Hinkley*, for Rebecca H. Sloan, appellant.—The legacies are not chargeable on the land devised to the residuary legatees: Gallagher's App., 48 Pa. 121; Cook v. Petty, 108 Pa. 138; Penny's App., 109 Pa. 324; Bennett's Est., 148 Pa. 139; Duvall's Est., 146 Pa. 176; Brookhart v. Small, 7 W. & S. 229; Nichols v. Postlethwaite, 2 Dall. 131; Paxson v. Potts, 3 N. J. Ch. 323; Witman v. Norton, 6 Binn. 395; Walter's App., 95 Pa. 305; Van Vliet's App., 102 Pa. 574; Montgomery v. McElroy, 3 W. & S. 370; Hassanclever v. Tucker, 2 Binn. 525; Davis's App., 83 Pa. 348; Brisben's App., 70 Pa. 410; Van Winkle v. Van Houton, 3 N. J. Eq. 172; Paxson v. Potts, 3 N. J. Eq. 313; Thomas v. Rector, 23 W. Va. 26; Read v. Cather, 18 W. Va. 263; Lupton v. Lupton, 2 Johns. Ch. 628; Brill v. Wright, 112 N. Y. 129; Stevens v. Gregg, 10 Gill & J. (Md.) 147; Gridley v. Andrews, 8 Conn. 1.

The existence of a power of sale has no tendency whatever to show an intention of the testator to charge the residuary realty: Perot's App., 102 Pa. 235; Becker's Est., 150 Pa. 524; McClure's App., 72 Pa. 414; Chew v. Nicklin, 45 Pa. 84.

Delay in the settlement of the estate which was wrought solely by the legatee should deprive his legacy of interest: Wickersham's App., 16 Phila. 213; Huston's App., 9 Watts, 472; Vandergift's App., 80 Pa. 118.

The gift to the Presbyterian Orphanage was defeated: Attorney General v. Lord Weymouth, Ambler, 23; 1 Jarman on Wills, 211; Poulston's Est., 11 Phila. 151; Appeal of Lutheran Congregation, 113 Pa. 34; Carl's App., 106 Pa. 635; Hoffner's Est., 161 Pa. 331.

*Robert J. Byron* and *Augustus W. Bomberger*, for Josephine Holbach and Mary Perry.—Interest should be six per cent per annum from the date of death to time of actual distribution; English v. Harvey, 2 Rawle, 305; Eyre v. Golding, 5

Binn. 472; Hilyard's Est., 5 W. & S. 30; Spangler's Est., 9'
W. & S. 135; Washington Brown's Est., 41 Leg. Int. 26;
Sergeant's Est., 9 Phila. 346; Townsend's App., 106 Pa. 268;
Steiner's Est., 13 Phila. 358; Flickwir's Est., 26 W. N. C. 374;
Bird's Est., 2 Pars. 168; King's Est., 32 Leg. Int. 74.

*H. S. Prentiss Nichols* and *Joseph de F. Junkin*, for Presby-
terian Orphanage.—The act of 1885 is in derogation of the com-
mon law of the jus disponendi, and its effect is to be strictly
confined to that which is within the spirit and reasons as well
as its words: Manners v. Philadelphia Library Co., 93 Pa. 165;
Appeal of Lutheran Congregation, 113 Pa. 34.

*John G. Johnson*, for The Pennsylvania Company for Insur-
ance on Lives and Granting Annuities, exr. — Where a testator
directs that certain legacies shall be paid, and devises and be-
queaths to the residuary beneficiaries merely "the rest, residue
and remainder of his estate, real and personal," the latter can
take no benefit under his will until the legacies are fully paid.'

The residuary real estate was charged with the payment of
all amounts due on legacies, not collectible out of the personal
estate: Greville v. Brown, 7 H. of L. Cases, 698; Hassenclever
v. Tucker, 3 Yeates, 294; Davis's App., 83 Pa. 348.

The pecuniary legatees were entitled to six per centum per
annum from the time the legacies were payable.

The effect of the codicil was not to give a new legacy to the
Presbyterian Orphanage, but to diminish by $2,000 the legacy
given by the will.

### SLOAN'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, May 27, 1895:

The appellant is one of three residuary legatees under the
will of James Watt. The testator made two specific gifts of
real estate and several pecuniary legacies amounting in the
aggregate to about one hundred thousand dollars. He then
gave all the "rest, residue and remainder" of his estate, real
and personal, to his three sisters, share and share alike. The
personal estate is not sufficient to pay the legacies, and the first
question raised by this appeal is over the liability of the real
estate for the deficiency. The court below rightly held that

the blending of the real and personal estate in the residuary clause bound the real estate for the payment of the legacies by implication, since "the residue and remainder" can only be ascertained after the payment of the debts, legacies, and expenses. This has been uniformly held in this state: Hassenclever et al. v. Tucker, 2 Binn. 525; Brisben's Appeal, 70 Pa. 405; Davis's Appeal, 83 Pa. 348. The testator died in 1886. His estate was immediately involved in litigation with one of the legatees who claimed to be his widow, and this claim was not finally disposed of until 1894, when a compromise was effected and the claim withdrawn. Pending this litigation the executors were unable to realize more than four per cent in income from the estate. The legatees claim interest at the rate of six per cent on their unpaid legacies and the appellant contends that they ought to receive no more than the estate has actually earned. The learned court below awarded interest at the legal rate. We do not see how it could have done otherwise. After the legacies became due and payable they were matured obligations against the estate, and bore interest, as any other liquidated demands would do at the rate fixed by law. The estate might have consisted of unimproved city property producing no income whatever. In that event, if the contention of the appellant is sound, the legacies would have borne no interest no matter how long they were withheld. It was doubtless to the advantage of the legatees that the claim of the alleged widow should be adjusted, and they may have acquiesced in what seemed a necessary delay in the settlement of the estate, but unless they agree to forego interest or to accept a less rate than that fixed by law, they were entitled to demand payment of principal and interest as soon as it was practicable for the executors to make it. The residuary legatees are in no position to complain, for the estate is charged with the payment of the debts and the pecuniary legacies first, and not until this is done is the residue ascertained or the extent of their interest in the estate determinable. The remaining question raised by the assignments of error is over the effect of the codicil upon the bequest to the Presbyterian Orphanage. The will was executed on the third day of January, 1885, and contained the following: "Item (14). I give and bequeath to the Presbyterian Orphanage in the State of Pennsylvania the sum of seven

thousand dollars to build a cottage for a school, and to be named the Findlay Highland Home." Some fifteen months later, on the 12th day of April, 1886, he executed a codicil, the sole purpose of which was to postpone the time when the money should be payable to the Orphanage, so that the interest upon five thousand dollars thereof should be payable to Jacob Michael while he lived, and the interest upon the remaining two thousand dollars thereof should be paid to Josephine Holbach, widow, during her natural life, and the principal sum should remain invested pending these lives. For the purpose of making this change the testator made the Pennsylvania Company for the Insurance of Lives and Granting Annuities a trustee, charged with the investment of the money and the payment of the interest to the annuitants until their respective deaths, and thereupon to pay over the respective sums held for the benefit of the deceased annuitants to the Presbyterian Orphanage for the purposes named in the will. The subject is introduced into the codicil by the words: "I hereby annul and revoke the bequest to the Presbyterian Orphanage in the State of Pennsylvania," and then follow immediately the words "and instead thereof I give and bequeath," to the trustee, for the purposes already stated, viz, for investment and payment of interest to the annuitants during the life of each and then for the payment of the principal over to the Orphanage "to build or aid in building said cottage for a school to be named the Findlay Highland Home." Within one calendar month after the execution of the codicil the testator died and the position is now taken that the bequest to the Orphanage is void under the act of 1855. The contention is that the bequest was revoked by the codicil, and the codicil defeated by the statute, so that the seven thousand dollars the testator intended for the construction of the Findlay Highland Home must now go to the residuary legatees. Whether this is so or not depends on the testator's intention. His intention is to be gathered from the codicil as a whole read in the light of the original bequest. Looking at the bequest we find the testator had given the Orphanage the sum of seven thousand dollars to be used for a specific purpose, viz, the erection of a cottage to be used as a school building and to be called by the name of the Findlay Highland Home. This would have been payable at the end of

one year after his own death.   The codicil gives the same sum
of money, for the same purpose, to be paid on the death of the
annuitants.   What the testator did, and all that he intended
to do, was to change the time for the payment of the bequest
so as to give the interest to the persons named in the codicil
while they lived.   This is not a revocation.   The fact that the
testator called it by that name does not make it so.   Revoke
means to recall, to take back, to repeal.   Annul means to abro-
gate, to make void.   The codicil did not recall or make void
the bequest in any particular except as to the time of payment,
and this it changed.   It left the donee, the gift, and the pur-
pose to which it was to be applied unchanged.   If the codicil
did not revoke the bequest then the act of 1855 has no appli-
cation, and the bequest stands as originally made, changed only
as to the time for payment.   But again, the testator says that
the codicil is to be "instead of" the bequest in the body of the
will.   This expression excludes the idea of revocation in its
technical sense, and is equivalent to a declaration that in such
particulars as the codicil differs from the bequest it is to take
the place of, or to be instead of, the bequest.   1 Jarman on
Wills, 178, states the rule to be that the words "instead of,"
used in a codicil, are held to mean "instead of so much only
as is incompatible with the codicil;" and cites several English
cases in support of his statement.   The codicil is incompatible
with the bequest in nothing except the time of payment, and
it therefore takes the place of the bequest, or stands instead of
it, only in that particular.   What the codicil really accom-
plishes is to provide a small life annuity for two of the testa-
tor's friends by withholding the bequest from the Orphanage
during their lives, that the interest upon it may be paid to them
in the meantime.   It really diminishes the value of the gift to
the Orphanage, for the benefit of the annuitants, and so falls
within the purview of the rule declared in Carl's Appeal, 106
Pa. 635.

The orphans' court made no mistake in dealing with this
question and the decree appealed from is now affirmed.   The
costs of this appeal to be paid by the appellants.