## Loughin's Estate

*Larzelere & Wright,* for accountants.
*Harry I. Hiestand,* for exceptant.
*Robert B. Brunner,* for remainderman.

HOLLAND, P. J., March 20, 1940.— . . .

The question is submitted whether the two legacies, which are now payable because the executors have funds in hand to pay them, carry interest from October 15, 1931, one year after the date of the death of testatrix and, if

so, in what amount. Since that date the assets of the estate have not earned more than one percent per annum. During the intervening period it was impossible to pay these two legacies because the executors could not find a purchaser for the real estate until July of 1937, and it was not until October 11, 1939, that they received the full purchase price in cash. The accountants therefore suggest that under section 21 of the Fiduciaries Act of June 7, 1917, P. L. 447, if interest is allowed on the legacies at all, it should not exceed the rate which the assets of the estate have earned during the period from one year after testatrix's death. Gladys Daniella Green, legatee of the $1,000 legacy, claims interest at the rate of six percent per annum from October 15, 1931, a year after the death of testatrix.

Section 21 of the Fiduciaries Act originally provided, inter alia:

"Interest on all pecuniary legacies, whether bequeathed directly or in trust, shall, unless a contrary intention appear by the will, begin to run from the expiration of one year from the death of the testator; . . ."

This section was amended, however, by the Act of June 24, 1939, P. L. 714, which provided, inter alia:

"Unless otherwise provided in the will, on all pecuniary legacies, whether bequeathed directly or in trust, interest at the legal rate or at the rate earned by the particular estate out of which such legacies are payable, whichever shall be less, shall begin to run at the expiration of one year from the death of the testator; except that, if the account of the executor be filed and confirmed and distribution awarded before the end of such year, then interest thereon shall run at such rate from the date of the award, and on all pecuniary legacies payable at a future period or upon contingencies or under other circumstances by which the payment and satisfaction of such legacies may be postponed or may not take place until a distant period after the death of such testator, interest at such rate, shall begin to run from the time when such legacy becomes payable. . . ."

The fact that these legacies could not be paid because of a deficiency of assets until the real estate was sold is not such a circumstance that would postpone the payment and satisfaction of the legacies so as to deprive the legatees of interest thereon from a year after the death of testatrix until the real estate was sold, as contemplated by the amendatory provisions of the act, even if said provisions apply to the legacies given by this will. Such circumstances are those only which arise from the peculiar provisions of a will which designate the time when payment of the legacy is to take place, and not circumstances growing out of the condition of the estate and its assets.

The more difficult question, however, is whether the amendment of 1939 operates upon this will at all; in other words, whether its provisions are retrospective or prospective. Neither the act in its original form nor the amendment contains a statement as to when its provisions are to become effective or whether the provisions of either applied only to wills drawn after their effective dates or, as in the case before us, to wills drawn after the time of taking effect of the act as originally passed, of a testator dying thereafter but before the amendment. If we had to consider the effect of an amendment to an act of assembly upon the validity of the execution of the will, or the construction of any of its provisions, our task would not be difficult, since we have the clear expression of the law by our Supreme Court in Spain's Estate, 327 Pa. 226 (1937). It was there held that the Wills Act of June 7, 1917, P. L. 403, as amended by the Act of July 2, 1935, P. L. 573, which abolished the requirement of subscribing witnesses to a will in order to make valid a charitable bequest, is applicable to the will of a person dying after the effective date of the amendatory act even though the will was executed prior to such date. The question we are dealing with, however, arises not out of provisions of the will itself, nor testatrix's intention either as expressed therein, or as gathered from the language of the will as a whole as to what her intention would have been had she expressed an intention, nor can it be based upon any act

done by the testatrix or which she failed to do between the date of the act and the date of the amendment. It arises by reason of the act of the legislature which in effect confers an additional benefit upon legatees by way of compensation for delay in payment of their legacies. Whether the benefit thus bestowed may be withdrawn or diminished by an amendment to the act, after the benefit has accrued to the legatee but before being received, seems to be the question here. We are of the opinion that was exactly what was intended by the legislature when it passed the amendment. We think that its power to do so cannot be seriously questioned. Prior to the amendment legacies were the same as any other liquidated demands insofar as interest was concerned, and bore interest at the rate fixed by law, unless the legatee agreed to accept less or should forego it entirely: Sloan's Appeal, 168 Pa. 422 (1895). The purpose of the amendment was plainly to make it possible for fiduciaries in proper cases to retain frozen assets of estates without being forced to sell often at tremendous sacrifices, to pay pecuniary legacies to legatees who are not the primary concern of the testator, and to give to such beneficiaries not within the favored class either income at the rate earned by the estate or interest at the legal rate, whichever is less. The amendment is sound in principle and can work no injustice. The present case seems to be peculiarly one where the law as it stood before the amendment worked an apparent inequality in favor of pecuniary legatees to the detriment of those entitled to the residue, because during the many years of industrial and financial depression that has been upon us it has been impossible in many estates, as in the present, to convert assets, particularly real estate, except at great sacrifice, to obtain sufficient cash for the payment of pecuniary legacies. If interest at the legal rate is allowed upon these two legacies the interest will amount to more than half the principal, thereby depriving the residuary legatee for life of any benefit, whereas if income is awarded at the rate earned by the estate all will

participate equally. It is hardly to be regarded as inevitable that the pecuniary legatees would have received more income than the rate earned by the estate had they been paid their legacies promptly at the expiration of the year after the death of testatrix and had invested the legacies during the intervening time. The settled rule is that, after a statute has been amended, it will be read as if the amendment had originally been part of it—as if a new act has been adopted in the amended form: Spain's Estate, supra, and cases cited therein at page 228. We hold that the Presbyterian Church at Port Kennedy and Gladys Daniella Green, upon their respective legacies of $300 and $1,000, are entitled to income from October 15, 1931, at the rate earned by the estate: Namely one percent, and award will be so made. . . .

### *Opinion sur exceptions*

HOLLAND, P. J., March 12, 1941.—On March 28, 1940, Gladys Daniella Green, entitled under the will of Isabella Loughin, deceased, to a legacy of $1,000, filed two exceptions to the adjudication. They may both be considered together as they raise the objection that the auditing judge allowed only the amount of income earned upon the legacy by the fund from October 15, 1931, which was at the rate of one percent, rather than allowing her interest at the rate of six percent from October 15, 1931, as provided by section 21 of the Fiduciaries Act of 1917, until June 24, 1939, when the section was amended by the Act of 1939, and thereafter at the rate earned by the fund, as provided by the Act of 1939.

The argument contained in the very able brief of counsel for exceptant is that the auditing judge applied the amendatory Act of 1939 retroactively, whereas the act in its terms shows no legislative intent that it should be retroactive. Counsel sets forth with unusual clarity in his brief the rule of statutory construction that an act can never be effective retroactively unless expressly stated in its terms, and even then it cannot retroactively divest

the property rights that have already vested. He also clearly states the rule of construction as laid down by the Statutory Construction Act of May 28, 1937, P. L. 1019, as amended. We can concede, however, all that the learned counsel has so ably set forth in his brief and still consistently affirm the conclusions of the auditing judge.

We hold that section 21 of the Fiduciaries Act of 1917, and its amendments of 1939, constitute rules of distribution and give no vested rights to a pecuniary legatee except upon the award in compliance therewith at the time of distribution. The benefits conferred upon the legatee do not originate in his vested rights as provided by the will. It is a gift conferred by statute in addition to the gifts given him under the terms of the will. The power that makes the gift can take it away when, in the wisdom of the legislature, it is deemed just and proper and promotive of public policy so to do.

The legatee first acquired a definite right to a sum of money by the terms of the will. The statute then directs that, having acquired such a right, it would be deemed to be due a year after the date of the death of testator and the interest at whatever rate regulated "shall begin to run at the expiration of one year from the death of the testator". We are of the opinion that the grant of this gift to the legatee is entirely a matter of legislative grace and vests no absolute right in him whatever, but can be taken away at any time up to the actual award of the legacy by a court of distribution. We see no hardship in this ruling, as it takes nothing whatever from the legatee that was given him by the will. Upon reëxamination of the adjudication we are of the opinion that the auditing judge came to the correct conclusion and made the proper award.

And now, March 12, 1941, the two exceptions are dismissed and the adjudication confirmed absolutely.