Braun Estate.

Argued December 4, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

E. *Russell Shockley*, with him *J. Harry Wagner, Jr.*, and *Schnader, Kenworthey, Segal & Lewis*, for appellant.

*William C. Ferguson, Jr.*, with him *George V. Strong* and *Strong, Sullivan, Saylor & Ferguson*, for appellee.

OPINION BY MR. JUSTICE JONES, January 5, 1948:

William P. M. Braun, a resident of Philadelphia, died testate on January 15, 1946. His last will bore date of March 16, 1926, and a codicil thereto was dated February 2, 1942. Both the will and codicil were duly probated and letters testamentary were granted by the Register for Philadelphia County to the testator's widow, Otylia S. Braun, and to one of his two sons. The other son, who was also named in the will as an executor, formally renounced. The two sons are the natural children of the testator and his wife.

By the will, the testator bequeathed specific legacies to his wife, to his sons and to certain named charities; and, by paragraph "Seventh", he bequeathed the sum of $50,000 to his executors in trust for his adopted daughter, Mildred, who was to receive the income quarterly after she reached the age of twenty-one and the fund outright when she became thirty-five years old. By paragraph "Eighth" of the will, the testator gave his residuary estate to his wife.

The daughter, Mildred Braun (now Dietrich), was born on August 6, 1910, and was adopted by the testator, *but not by his wife*, in 1915 by a decree of the Court of Common Pleas of Philadelphia County. At the date of the codicil, she was thirty-one years old, was married and had two children. She is now over thirty-five years

old and, therefore entitled under the will to the trust fund, absolutely, unless her right thereto was taken away by a provision in the codicil to which reference will now be made.

The codicil, which, as the learned auditing judge found, "appears to have been drawn informally by testator himself", made some change in the bequests to the charities named in the will and reduced the sons' legacies by bequeathing to their mother certain stocks given them by the will. But, the presently important part of the codicil is the first paragraph thereof which contains the following provision: "First: I hereby revoke the Trust Fund in favor of my Daughter Mildred, and substitute a lump sum of            dollars in cash." Mrs. Braun, the residuary legatee, contends that the provision in the codicil, just quoted, constitutes an unqualified revocation of the legacy in trust for Mildred, as bequeathed by the will, and that the portion of the provision purporting to be a substitute gift is void for uncertainty in that it fails to specify any number of dollars.

The learned auditing judge held, however, that the legacy to Mildred was not revoked by the codicil and, accordingly, awarded her (then past thirty-five) the trust fund outright. The decision was based on the grounds (1) that the doctrine of dependent relative revocation is applicable and (2) that the revocation was conditioned upon the substitutional gift's being made effective which it never was, wherefor the revocation was legally ineffectual. The court en banc dismissed exceptions of the residuary legatee to the adjudication which was thereupon confirmed absolutely. From the consequent final decree entered, Mrs. Braun brings this appeal.

The doctrine of dependent relative revocation is a rule of testamentary construction whose use, as in the case of all such rules, is limited to aiding in the ascertainment of a testator's true intent. While the learned court below correctly observed that the doctrine "is not

forbidden by the authorities in Pennsylvania", in *Mc-Clure's Estate,* 309 Pa. 370, 373, 165 A. 24, where the applicability of the rule at times was acknowledged, it was also said that the doctrine "has not as yet been accepted in its arbitrary form in this State". Just what its "arbitrary" form may be or what the caution was intended to mean, in terms of the rule's availability in Pennsylvania, was not further explained or defined. Certain it is that there was no occasion for the use of the doctrine in the *McClure* case. There, where a later will (an earlier one also being extant) made disposition of the testator's entire estate and there was no relation between a new bequest to a charitable residuary legatee by the later will and an old bequest to an educational corporate beneficiary by the earlier will, and the charitable bequest failed (being immature at the time of the testator's death), it was properly held that the later will constituted a complete revocation and that, as no relation existed between the new (invalid) bequest and the old revoked gift, there was no basis for an application of the doctrine of dependent relative revocation.

*Melville's Estate,* 245 Pa. 318, 322, 91 A. 679, is a case of an express and absolute revocation which left nothing to implication with respect to the testator's *animus revocandi.* Indeed, it is a matter of distinguishing note that, in the *Melville* case, the absolute revocation by codicil of a bequest contained in the antecedent will was not for the purpose of continuing some benefaction to legatees favored by the will but for quite the opposite effect. The failure of a testamentary disposition to a charity (because of an insufficient lapse of time between the testamentary writing and the testator's death), contained in a subsequent will or codicil which revokes a former will or bequest furnishes no implication as to the testator's intent with respect to the revocation in case the accompanying disposition should fail. The revocation being complete and not expressly conditioned, it is separately effectual. But, the *Melville* case pertinently notes (p. 323) that the authorities "all recog-

nize a clear distinction between failure of the dispositive part of the revoking instrument because of a defect in the instrument, and failure because of extrinsic circumstances; and there is entire concurrence of view that in the former case [such as here] the revocation is inoperative, while in the latter [gift to charity void because of immaturity] it must prevail". The primary question, therefore, in any instance is as to the character of revocation.

Here we have a case where the dispositive part of the revoking instrument fails because of a defect intrinsic to the instrument, in that, the bequest which was to be the substitute for what the codicil purported to revoke was permitted to remain incomplete. Accordingly, the doctrine of dependent relative revocation at once became applicable. The circumstances of the case aptly fit the requirements of the rule, a concise statement whereof is to be found in Jarman on Wills (7th Edition, 1930), Vol. 1, at p. 135, as follows: "Where the act of destruction is connected with the making of another will, so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction; and therefore, if the will intended to be substituted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force . . .". See also Gardner on Wills, Second Edition, at pp. 232-233, where Jarman is cited and quoted, substantially as above; and *Lutz's Estate*, 27 W.N.C. 403, 406, where the late Judge PENROSE, of the Orphans' Court of Philadelphia County, quoted with approval an English expression of the doctrine as defined by Lord Alvanley in *Ex parte Ilchester*, 7 Ves. 372.

The result to which the doctrine of dependent relative revocation thus directly leads in this case is precisely what the testator's will and codicil produce when interpreted together as the law requires: see *Moore Estate*, 347 Pa. 276, 280, 32 A. 2d 12, where *Rainear's Es-*

*tate,* 304 Pa. 539, 543, 156 A. 166, was quoted from to the following pertinent effect,—"It is a well-established rule of testamentary interpretation that a will and codicil must be construed together and that a codicil shall disturb the dispositions of the original will only where its provisions are plainly inconsistent with the will: Vernier's Est., 282 Pa. 194, 198; Warne's Est., 302 Pa. 386, 394".

By his will, the testator bequeathed to his daughter, Mildred, $50,000 in trust to be received by her outright when she reached the age of thirty-five years. Nowhere thereafter, and certainly not in the codicil, did the testator ever indicate that his daughter was to cease being an object of his testamentary bounty. As the learned auditing judge pointed out (citing *Sloan's Appeal,* 168 Pa. 422, 32 A. 42, and *Moore Estate,* supra), the so-called revocation in this case was not a revocation even though the testator tabulated it as such. The provision in the codicil was in truth a "substitutional bequest". In *Sloan's Appeal,* supra, where the testator, by codicil, purported to revoke a prior testamentary bequest and in connection therewith merely changed "the time for the payment of the bequest so as to give the interest to the persons named in the codicil while they lived", this court said (p. 430),—"This is not a revocation. The fact that the testator called it by that name does not make it so. Revoke means to recall, to take back, to repeal." See also *Bingaman's Estate,* 281 Pa. 497, 127 A. 73.

Here, the testator's plain desire was to lift his benefaction to his daughter out from under the trust which the will had imposed. She had been only fifteen years old when the will was written, but, even then, the testator intended her to receive the principal of the trust outright when she reached the age of thirty-five. When he came to make the codicil, his daughter was then thirty-one years old, married and the mother of two children. His intent with respect to her legacy is evident. It was the "Trust Fund" which he desired to re-

voke by the codicil and to substitute therefor an outright gift of a certain number of dollars. The provision in the codicil was not a revocation but a substitution; and, because the substitutional gift was never completely defined, there existed no testamentary purpose for the so-called revocation that can be derived from anything the testator indicates by either the will or codicil.

The appellant contends that the revocation specified in the codicil was independent and complete and that the provision for a substitute bequest is void for want of certainty. In that connection, the appellant argues that there are evidences to be drawn from the codicil that the testator intended to cut down the amount of his bequest to his daughter. The point is not helpful to the appellant. The contention impliedly concedes that the testator meant to give his daughter something by the codicil. In passing, it may be said that it is equally inferable that the testator meant to increase the amount of his bequest to his daughter. By the codicil, he increased the net amount of his bequests to charity and also increased his bequest to his wife. True enough, he made the latter augmentation by taking away from his sons a bequest of certain stock bequeathed to them by the will. However, the fact that he thus reduced his bequest to his sons furnishes no inference that he meant to reduce the bequest to his daughter. Had he not good reason to believe that the mother would take care of the sons who were her own natural children? And, no one but the testator was under any parental duty to the daughter. But, whether the testator meant, by his codicil, to increase or decrease his bequest to his daughter is of no moment. As the appellant's argument implies, the testator meant to give his daughter something by his codicil; yet, he neglected to complete the gift. No amount of conjecture can obscure that fact. And, not having given his daughter anything by the codicil, the so-called revocation, upon which the incomplete substitute gift was dependent, became wholly inoperative.

The interpretation thus placed upon the will and codicil in this case comports with well-established canons of construction. The general scheme of a will is not to be overborne by modifying directions that are incomplete, ambiguous or equivocal. " 'Such directions are to be so construed as to support the testator's . . . main intention' ": *Baugh's Estate,* 288 Pa. 308, 311, 136 A. 210, quoting from *Sheetz's Appeal,* 82 Pa. 213. Nor is a codicil to be construed so as "to disturb or change the dispositions of a will further than is necessary to give effect to the provisions of the codicil": see *Chauncey's Estate,* 335 Pa. 73, 76, 5 A. 2d 795, and cases there cited. In the present instance it is imposible to give the dispositive provision of the codicil any meaning whatsoever. Moreover, to adopt the appellant's unreasonable contention that the codicil worked a complete revocation of the bequest to Mildred would be to have the testator disinherit an heir contrary to his legally presumed intent: see *Knox's Estate (No. 2),* 328 Pa. 188, 191, 195 A. 34, and cases there cited. To summarize, in the language of *Baugh's Estate,* supra, "We cannot conceive that by the one short [uncompleted] sentence [of the codicil the testator] intended to strike down all he had so thoughtfully constructed in the will . . .".

The decree is affirmed at the appellant's costs.